COMMONWEALTH *vs.* JOHN SULLIVAN.

Suffolk.   February 3, 1888. — February 28, 1888.

Present: MORTON, C. J., DEVENS, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Lottery — Indictment — Evidence.*

An indictment on the Pub. Sts. c. 209, § 1, alleging that the defendant "did set up and promote a certain lottery, . . . . which said lottery was then and there for money," is sufficient.

At the trial of an indictment for setting up and promoting a lottery, the evidence described a game substantially like the policy or envelope game, and the judge ruled that, if the evidence was believed, "it was a lottery and a setting up and promoting a lottery," and that the jury would be warranted in finding the defendant guilty. *Held,* that the ruling did not go too far.

On cross-examination a witness was asked if a person, present with him on another occasion when the game was played, did not charge him with having picked up on the floor a ticket produced at the trial, and with having proposed to swear that it was bought of the manager of the game. *Held,* that the exclusion of the question was within the judicial discretion.

If it does not appear with certainty that several transactions were not parts of one continuous setting up and promoting a lottery, the government is not obliged to elect one transaction on which to go to the jury.

INDICTMENT alleging that the defendant "did set up and promote a certain lottery, the name and a more particular description of which said lottery being to said jurors unknown, which said lottery was then and there for money, said lottery not being then and there authorized by law in said Commonwealth."

Trial in the Superior Court, before *Bacon,* J., who allowed a bill of exceptions, which, so far as material, was as follows:

Franklin H. Walker, the only witness called by the government, testified that he knew the defendant; that on April 1, 1886, he went to a small room in building No. 1156 Washington Street, Boston, in which was a long counter, and behind it were some men writing; that thirty minutes after he got there the defendant came in, took off his coat and hat, and said to one Graham, who was one of the writers, "I am ready to go to work"; that he asked the defendant if he was a writer there, and the defendant said he was, and on being further asked if he was the proprietor, replied that he was only hired there, and did it for money; that he asked the defendant to whom he should look for his

money if he won any, and the defendant said he would settle all as soon as the drawings were made; that he gave the defendant four numbers, — what is called a "horse," that is, a combination of four numbers from a column of 78; that if he had given the defendant three numbers it would have been a "gig"; that he paid ten cents to the defendant; that he saw several other persons give the defendant numbers and give and take money; that the defendant gave him a ticket or piece of paper with 479 on it; and on being asked, "What does 479 stand for?" replied, "The number for the drawing; each drawing is numbered a class number. The drawings are put in envelopes."

Walker further testified, that he stayed there ten or fifteen minutes, and saw others receive from the defendant similar papers with numbers, and give money to him; that the defendant stood up and asked if there were any other parties that wanted to take part in the game; that the defendant took an envelope from the wall, and taking therefrom a slip of paper with twelve numbers in each column below 78, turned around and copied with chalk the numbers on a black-board, and also the class number; that then a man made a claim of five dollars, and the defendant paid him with money from the counter drawer; that then the defendant continued to write again, and he remained and saw another drawing made in the same way; that the numbers that the persons wanted to give the defendant, or call out, the defendant would write on slips of paper in place of the money he took from them; and that then, when the audience ceased to take part, another drawing was made, that is, the defendant took another envelope and took out a drawing just as he did in the other case.

Walker was then asked to "describe this game in full, — in detail"; but this question was excluded by the judge, and he proceeded to testify that his four numbers were 4, 17, 11, 44, and were not in the claim; that he was not entitled to any claim because those numbers did not appear in the claim, and that he did not draw any money. The latter portion of this testimony was objected to.

On cross-examination, Walker was asked, "Did one Washington go with you to this room on March 31, or April 3, 1886?" to which he replied, "Yes"; and "Did n't Washington charge you with picking up this paper you have produced, and other papers

with numbers on them, from the room floor, and proposing to him to go into court and swear that they were bought of defendant and Graham, and did n't Washington say that he would n't have anything to do with you on that account?" The latter question was excluded, on objection by the district attorney.

The defendant also asked the judge to require the government to elect some transaction, complete by itself, on which they would go to the jury; but the judge refused so to rule, and ruled that the government might rely on all the transactions of said April 1, and that, as matter of law, if the jury should believe the evidence of Walker, "it was a lottery, and a setting up and promoting a lottery, and they would be warranted in finding that the defendant was guilty of setting up and promoting a lottery."

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*J. L. Eldridge*, (*D. F. Fitz* with him,) for the defendant.

*A. J. Waterman*, Attorney General, (*H. C. Bliss*, Assistant Attorney General, with him,) for the Commonwealth.

HOLMES, J.  1. This is an indictment under the Pub. Sts. c. 209, § 1, for setting up and promoting a lottery. The indictment follows the words of the statute, and is well enough.

2. The testimony described a game substantially similar to that described in *Commonwealth* v. *Wright*, 137 Mass. 250, which the jury found to be a lottery. The defendant asked the court to rule that there was no sufficient evidence to warrant a conviction. The court refused so to rule, but ruled that, if the evidence was believed, "it was a lottery, and a setting up and promoting a lottery," and that the jury would be warranted in finding the defendant guilty. If the statement that "it was a lottery," &c., was anything more than a preliminary explanation of why the court refused the defendant's request, the substance of the ruling made being that there was evidence for the jury, we cannot say that it went too far.

The testimony was not very clear, it is true, and further description seems to have been excluded on the defendant's objection. But if the evidence meant anything, it described a game in which a price was paid for a chance of a prize, and in which it purported to be determined by chance; that is, by means making the result independent of the will of the manager of the

game, according to a scheme held out to the public, whether he who paid the money should have the prize or nothing. This having been determined to be a lottery in *Commonwealth v. Wright*, it is not necessary to go on forever taking the opinion of the jury in each new case that comes up. Whether or not a definitely described game falls within the prohibition of the statute, is a question of law. The defendant was bound to know at his peril. Whatever practical uncertainty courts may have felt upon a subject with which they are less well acquainted than some others of the community, in theory of law there is no uncertainty, and the sooner the question is relieved from doubt the better.

3. The court excluded a question by the defendant on cross-examination, whether one Washington, who, on another occasion, accompanied the witness to the same place, did not charge him with having picked up a paper produced, and with having proposed to Washington to swear that it was bought of the defendant, &c. The exclusion was proper, in the discretion of the court. There was no offer to prove that the witness acquiesced in the charge. The means of Washington's knowledge were not suggested. The witness might have been asked about the fact with which he was supposed to have been charged, and Washington might have been produced to contradict him if he could do so.

4. It did not appear with certainty that all the transactions of April 1 were not parts of one continuous setting up and promoting a lottery. The tendency of the evidence was the other way. The motion that the government should be required to elect some transaction complete in itself was rightly overruled.

*Exceptions overruled.*