COMMONWEALTH *vs.* JOHN E. WARD.

SAME *vs.* SAME.

Bristol.    October 24, 1932. — November 28, 1932.

Present: RUGG, C.J., CROSBY, WAIT, DONAHUE, & LUMMUS, JJ.

*Lottery.    Director of Standards.    License.*

At the hearing together of two complaints, charging respectively violations of G. L. (Ter. Ed.) c. 271, §§ 5, 7, it appeared that the defendant obtained permission from the owner of a store to install therein an "Erie Digger," a machine which contained a miniature steam shovel in a glass case and which bore a notice announcing that "This Machine is for Amusement and Exhibition Only," with directions as to its operation, and that it was "Approved by the Director of Standards for Massachusetts"; that one, after dropping in a coin, manipulated the shovel by a handle and received through a chute candy and small

objects scattered therein which the shovel picked up; that what the operator so received was determined by chance, not skill; that the defendant visited the machine frequently to replenish it and to remove money therefrom; and that the money was divided according to certain percentages among the proprietor of the store, the owner of the machine and the defendant. *Held*, that

(1) A finding was warranted that the machine, in the circumstances, was a lottery within the meaning of the statute;

(2) The certificate of the director of standards was not a license; he had no power to license a lottery;

(3) A finding was warranted that the defendant "actually used and occupied" the store within the meaning of § 5;

(4) A finding of guilty on each complaint was warranted.

Two COMPLAINTS, received and sworn to in the Third District Court of Bristol on May 11, 1931, and May 12, 1931, and described in the opinion.

Upon appeal to the Superior Court, the defendant waived trial by jury of each complaint and they were heard together by *T. J. Hammond*, J., upon certain agreed facts and oral testimony. Material facts and evidence are stated in the opinion. The judge denied motions by the defendant that he be found not guilty on each complaint. He was found guilty on each. The judge then reported the complaints for determination by this court.

*E. P. Carver, Jr.*, for the defendant.

*F. E. Smith*, Assistant District Attorney, for the Commonwealth.

WAIT, J. The defendant was found guilty upon a complaint under G. L. (Ter. Ed.) c. 271, § 7, which charged that he "did unlawfully promote a certain lottery for money or other property of value"; and upon each of the five counts of another complaint, under G. L. (Ter. Ed.) c. 271, § 5, which, in slightly varying language, charged that at a store numbered as stated upon a stated street in New Bedford, he "did commonly keep and suffer to be kept in a building" or "in a building or place" "actually occupied by him" or "actually used and occupied by him" "certain apparatus, to wit, a slot machine, for the purpose of playing at an unlawful game or sport for money or other valuable thing." He waived trial by jury. Sentence was imposed, but execution thereof has been suspended. The

cases, after appeal by him, are before us at his request and by his consent upon a report of the trial judge.

The defendant contends there was error in the refusal to rule that (1) the Commonwealth has failed to prove that he did keep slot machines in five different buildings in New Bedford actually occupied by him; (2) as matter of law the Commonwealth has failed to prove that he promoted or set up a lottery; and (3) "As a matter of law, the setting up and installation of the machines in question was not a promotion of lottery within the meaning of the statute."

There was evidence that the defendant solicited and obtained permission from the proprietors of the five stores to place in each store a slot machine known as an "Erie Digger." The store proprietor was to receive thirty per cent of the money put into the machine, and the remaining seventy per cent, less a commission of twenty-five per cent to the defendant, went to the company which owned the machines. The defendant visited the machines daily or frequently to remove money and to replenish them. The "Digger" was about five feet high, two feet wide and eighteen inches deep. The upper part held a miniature steam shovel in a glass case. The shovel could be moved by a handle outside the case operated by the person trying the machine. By manipulating the handle the shovel could be stopped in the vicinity of the object within the case which the operator desired; thereupon the shovel dropped, took up candy and small objects scattered in the candy, carried the load to a chute and dropped it into the chute, whence the operator took it. Witnesses who operated a machine in court failed in almost all trials to pick up the objects they purposed obtaining; and the judge found that chance, not skill, determined what one would get. A label on the front announced: "This Machine is for Amusement and Exhibition Only. YOU PAY 1c TO SEE IT WORK Put Coin in Slot — Turn Handle to Right WHATEVER YOU DIG UP WITH THE MINIATURE STEAM SHOVEL AND DUMP ON TO THE SHUTE YOU MAY HAVE AS A FREE SOUVENIR FROM THE ERIE DIGGER. CAUTION: Tamperers will be Prose-

cuted by Law." The director of standards authorized the following to be affixed to the device: "THIS COIN OPERATED DEVICE FOR FURNISHING ENTERTAINMENT APPROVED BY THE DIRECTOR OF STANDARDS FOR MASSACHUSETTS." The defendant supplied some of the storekeepers with a box of candy from which to solace children who failed to get a cent's worth of candy from an ordinary operation of the machine.

In *Commonwealth* v. *Mackay*, 177 Mass. 345, 346, a lottery is defined as "a scheme for the distribution of prizes by chance." There was no error in finding the apparatus, operated and tended as this was, to be a lottery. It was permissible to find as a fact that hope of gaining more or less candy and, possibly, one of the objects mixed with it, was counted upon as being fully as great an incentive to slip a penny into the slot as the beatitude of seeing the shovel work. What one got was matter of chance. What one paid for, in part at least, was the fun of seeing what one got. Compare *Commonwealth* v. *McClintock*, 257 Mass. 431. The certificate of the director of standards was not a license. Nor had he power to license a lottery.

What constitutes "a building or place actually used and occupied by" one who commonly keeps there "apparatus for the purpose of playing at an unlawful game or sport for money or any other valuable thing" within G. L. (Ter. Ed.) c. 271, § 5, need not be defined exhaustively. Here it could be found that the defendant, by bargain, obtained a right to install a machine, within buildings to which he had right of access, to observe, to care for and to replenish it in a course of business. At least, he obtained a revocable license to use definite space in a building for and to occupy it with his machine. We think the exercise of such a right constitutes use and occupation of a building or place within the meaning of the statute. It is not a mere transitory presence in the stores. It differs from the presence of bookmakers in the enclosure at a race course. *Powell* v. *Kempton Park Racecourse Co. Ltd.* [1899] A. C. 143. While his license was in force no one could put him out or interfere with his doings. He had an occupation and a use of a

definite space — of a place and of the building within which the place was located, which was actual, existing and definite. There was no error in denying the motion or in the findings made. Our order must be

*Judgment affirmed.*