MRS. R. E. DORMAN, *et vir.* v. PUBLIX-SAENGER-SPARKS THEATRES, INC.

184 So. 886
Division A.
Opinion Filed December 7, 1938.

*Douglas & Schad,* for Plaintiff in Error;

*Fred H. Kent, McCarthy, Crenshaw* and *Kent, Wheeler & Crenshaw,* for Defendant in Error.

BUFORD, J.—In this case plaintiff in error sued defendant in error filing a declaration in three counts. The first count of the declaration alleged:

"That the defendant, at the time of the institution of this suit and at the times hereinafter referred to, conducted and operated in the City of Gainesville, Florida, among others, two certain motion picture theatres commonly known respectively as the Florida Theatre and the Lyric Theatre; that at the times hereinafter referred to and for upwards of ten months next prior to the institution of this suit, the defendant, in connection with said motion picture theatres, conducted a scheme or plan of advertisement therefor commonly known as Bank Night that by said scheme or plan the defendant proposed and advertised to the public in said City of Gainesville that on Tuesday night of each week the defendant would pay a certain sum of money on the succeeding Tuesday night to that person who attended said

Florida Theatre or Lyric Theatre, or who was sufficiently near either of said theatres on the outside thereof to claim the said sum, by making the presence of such person known to the officers or agents of either said Florida Theatre or Lyric Theatre from within either of said theatres, from the lobby of either of said theatres, or from a point on the outside of either of said theatres, within a reasonable time on the night of the drawing after the name of the person entitled thereto was announced by or on behalf of the defendant from the stage or either of said theatres, the lobby of either of said theatres, or in front of each of said theatres, and that the name of the person to whom the said sum of money would be paid would be determined by having some blindfolded person chosen by or on behalf of the defendant draw from a cylinder on the stage of the Florida Theatre one of the numbers designated on the pieces of paper contained in said cylinder, and that the pieces of paper contained in said cylinder would disclose the respective numbers assigned by or on behalf of the defendant at the time of registering to such persons as had registered their names in books provided by the defendant for that purpose, and for the permission to make which registration the defendant made no charge whatsoever; that the sum which the defendant proposed and advertised as aforesaid the defendant would pay under the scheme or plan aforesaid on Tuesday, September 28, 1937, was the sum of $500.00; that on Tuesday, September 28, 1937, the plaintiff, pursuant to and in reliance upon the defendant's aforesaid plan or scheme, was present outside said Lyric Theatre and nearby thereto at the time the defendant caused to be determined under the plan or scheme aforesaid the name of the person entitled to receive said sum of $500.00, and at that time the plaintiff was one of those who had prior thereto, in conformity with the defendant's said plan or scheme, registered in one of the

defendant's registration books provided for the purpose aforesaid. That on Tuesday night, September 28, 1937, pursuant to and in conformity with defendant's said plan or scheme aforesaid, the defendant caused to be drawn on the stage of the Florida Theatre from the cylinder aforesaid, one of the pieces of paper containing the numbers of the registrants aforesaid, and that the number so drawn was the number which the defendant had assigned to the plaintiff at the time of the plaintiff's registration, and that the defendant then and there caused to be announced from the stage of said Florida Theatre that the plaintiff was entitled to the said sum of $500.00; that the plaintiff, at the time and place last referred to, within a reasonable time from plaintiff's name being announced by or on behalf of the defendant from the stage of the said Florida Theatre as the name of the person entitled to said sum of $500.00, did from the nearby proximity of said Lyric Theatre and from the lobby thereof make the presence of the plaintiff known and claim said sum of $500.00, to the employees of the defendant at the box office of said Lyric Theatre and the lobby of said Lyric Theatre, and did keep and perform each and every act and thing required of the plaintiff by the terms of the defendant's aforesaid plan or scheme, to entitle the plaintiff to receive from the defendant the said sum of $500.00, nevertheless, the defendant, in violation of its said proposal and undertaking, did then and there refuse, and at all times thereafter has continued to refuse, to pay to the plaintiff said sum of $500.00, or any portion thereof."

There are no material differences between the 1st count and the 2nd and 3rd counts. The same cause of action is alleged in slightly different language, but the basic facts are alleged alike in all counts.

Demurrer was filed stating a number of grounds and the

demurrer was sustained without indication by the court upon. what ground or grounds it was sustained.

The plaintiff refusing to plead further, judgment was had, on demurrer sustained to the declaration and writ of error was sued out.

The first three questions submitted by defendant in error. in its brief are as follows:

"Did the published proposal or advertisement to give away a sum of money under the plan of bank night alleged in the declaration constitute or result in an offer to enter into a binding legal contract which could become effective by one, merely attending the drawing and not purchasing a ticket of admission?

"Did not the proposal and advertisement to give away a sum of money under the plan of bank night alleged in the declaration constitute a mere published notice of voluntary intention to make a gift as distinguished from an offer to contract?

"Does presence at or near a place in anticipation of re-. ceiving a gift or gratuity constitute a consideration or convert a mere published intention to make a gift at such place into a contract or create legal responsibility for refusal to make a gift?"

Aside from the questions above stated, the demurrer presented the question of whether or not the allegations of the declaration on the face thereof showed that the transaction described in the declaration and constituting the cause of action constituted a lottery. It, therefore, becomes necessary for us in determining the merits of the demurrer to determine whether or not the plaintiff is barred from recovery because the transaction constituting the basis of the cause of action was a lottery.

The first question to be determined is whether the offer of the Theatre Company is one to make a gift upon condition

or one for a binding contract upon acceptance and performance of the terms of the offer.

In Williston on Contracts, Vol. 1, Sec. 112, p. 232 (1920 Ed.) it is said:

"If a benevolent man says to a tramp,—'if you go around the corner to the clothing shop there, you may purchase an overcoat on my credit,' no reasonable person would understand that the short walk was requested as the consideration for the promise, but that in the event of the tramp going to the shop the promisor would make him a gift. Yet the walk to the shop is in its nature capable to being consideration. It is a legal detriment to the tramp to make the walk, and the only reason why the walk is not consideration is because on a reasonable construction, it must be held that the walk was not requested as the price of the promise, but was merely a condition of a gratuitous promise. It is often difficult to determine whether words of condition in a promise indicate a request for consideration or state a mere condition in a gratuitous promise. And aid, though not a conclusive test in determining which construction of the promise is more reasonable is an inquiry whether the happening of the condition will be a benefit to the promisor. If so, it is a fair inference that the happening was requested as a consideration. On the other hand, if, as in the case of the tramp stated above, the happening of the condition will be not only of no benefit to the promisor but is obviously merely for the purpose of enabling the promisee to receive a gift, the happening of the event on which the promise is conditional though brought about by the promisee in reliance on the promise will not properly be construed as consideration."

Applying the test set out by Williston we find that if the attendance by the public (of which plaintiff in error was one), or the registration of the public was a benefit to the

promisor, it is a fair inference that the attendance and registration were requested as a consideration. And it is axiomatic in the law of contracts that a benefit flowing to the Theatre Company from a third party is sufficient consideration irrespective of whether there is a benefit flowing from the promisee. Page on Contracts, Vol. 1, Section 531 (1919 Ed.). It is not necessary that the registration or presence of plaintiff in error alone should supply this benefit.

In 13 C. J., Contracts, Section 150, p. 318, it is said:

"In the matter of a benefit, a mere expectation or hope, or a contingent benefit, is sufficient, as, for example, the expectation of advantage or profit from the thing promised."

Thus, it is immaterial whether or not the presence of the participants in "bank night" actually increased defendant in error's box office receipts. The hope or expectation that it would was sufficient. Under this rule we are of the opinion that the registration and attendance of the public were a benefit to the Theatre Company.

Since the requested acts (registration and attendance at the theatre) resulted in a benefit to the Theatre Company, and were done on the faith of the promise to pay, such acts must be regarded as having been requested as the consideration for a valid and binding contract rather than as mere conditions to a promise to make a gift.

The next question presented is whether or not the registration and attendance of the plaintiff in error is sufficient consideration to support a contract, a breach of which would subject the promisor to liability for damages.

The consideration required to support a simple contract need not be money or anything having monetary value, but may consist of either a benefit to the promisor or a detriment to the promisee. Williston on Contracts, Vol. 1, Sec. 102 (1921 Ed.) ; Elliott on Contracts, Vol. 1, Sec. 203, (1913 Ed.) ; Tampa Northern R. Co. v. City of Tampa, 104 Fla.

481, 140 So. 311; rehearing denied, 105 Fla. 367, 141 So. 296.

"It is not necessary that a benefit should accrue to the person making the promise; it is sufficient that something valuable follows from the person to whom it is made, or that he suffers some prejudice or inconvenience, and that the promise is the inducement to the transaction. Indeed, there is a consideration if the promisee, in return for the promise, does anything legal which he is not bound to do, or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not." 13 C. J., Contracts, Sec. 150, pp. 315-316. See also Henderson v. Kendrick, 82 Fla. 110, 89 So. 635, Bigelow v. Bigelow, 95 Maine 17, 49 Atl. 49.

It stands admitted on the record that at the time of this particular drawing, Mrs. Dorman, the plaintiff in error, "pursuant to and in reliance upon the defendant's aforesaid plan and scheme, was present outside said Lyric Theatre and near thereto" and that plaintiff in error "was one of those who had prior thereto, in conformity with the defendant's said plain or scheme, registered in one of the defendant's registration books, provided for the purpose aforesaid." Both of these acts involved the doing by Mrs. Dorman at defendant's request of something which she not only was under no obligation to do, but had a right not to do. Therefore, such acts come well within the accepted definition of "legal detriment" and were in themselves ample consideration for defendant's agreement to pay, regardless of whether they were of any pecuniary value. See Earle v. Angell, 157 Mass. 294, 32 N. E. 164, which held that attendance at the funeral of promisor pursuant to the latter's request and agreement to pay the promisee $500.00 if he would do so, was sufficient consideration to support the agreement,

and that having performed, the promisee could recover the $500.00 in an action against the promisor's estate.

In its brief the defendant in error has cited a number of cases involving the elements of consideration holding that mere attendance at the Theatre would not be a sufficient consideration to constitute a lottery. Then defendant in error contends that these elements do not furnish a consideration in any case, whether a penalty is involved or whether civil rights are involved. This contention is not well founded.

In Simmons v. Randforce Amusement Corporation, 162 Misc. 491, 293 N. Y. S. 745, decided by the Municipal Court of the City of New York, the plaintiff sought to recover $250.00 by reason of being the holder of the winning number drawn by defendant on one of its "bank nights." It was held that the act of a person in signing his name in a book and attending the night of the draw, at the request of the theatre, was "adequate consideration" for promise of a prize by the theatre to its patrons and others. The plaintiff was allowed to recover from the theatre on its refusal to pay for breach of contract.

In Commonwealth v. James Wall, (Mass.) 3, N. E. (2nd) 28, it is said (page 29) :

"One may give away his money by chance, and if the winner pays no price, there is no lottery. 'Price' in this connection means something of value and not the formal or technical consideration which would be sufficient to support a contract. Yellow-Stone Kit v. State, 88 Ala. 196, 7 So. 338, 7 L. R. A. 599, 16 Am: St. Rep. 38; Hull v. Ruggles, 56 N. Y. 424, 427; Chancy Park Land Co. v. Hart, 104 Iowa 592, 595, 73 N. W. 1059. * * *

"There was error, however, in instructing the jury in substance that any technical and non-valuable consideration 'whether registration of the name or anything else' would be a sufficient price."

In Lee v. City of Miami, 121 Fla. 93, 163 Sou. 486, this Court, in a majority opinion, held:

"1. At common law, lotteries were illegal only when they became public nuisances. 'Lottery' is a scheme for distribution of prizes by lot or chance. It is game of hazard in which small sums are ventured for chance of obtaining larger value either in money or other articles, 'Lottery' exists where pecuniary consideration is paid and it is determined by lot or chance, according to some scheme held out to public, what and how much he who pays money is to have for it. 'Lottery' is scheme by which result is reached by some action or means taken, and in which result is reached man's choice or will has no part, and in which human reason, foresight, sagacity, or design do not enable man to know or determine result until same has been accomplished.

"2. Constitutional prohibition against lotteries was intended to suppress schemes for distribution of prizes by lot or chance which infected entire community or country and not merely individuals therein and any gambling device reaching such proportions is 'lottery' within constitutional prohibition (Const. Art. 3, Sec. 23).

"3. While legislature cannot legalize gambling device which amounts to lottery, it can regulate and prohibit any and all other forms of gambling (Const. Art. 3, Sec. 23).

"4. Statute licensing and regulating coin-operated devices, including automatic coin-operated vending and amusement machines with premium features, coin-operated skill machines and premium trade machines, *held* not violative of constitutional prohibition against lotteries, since machines enumerated in statute were not 'lotteries' *per se* (Acts 1935, c. 17257; Cont. Art. 3, Sec. 23)."

The writer did not concur in that opinion, but running through all the definitions which were applied to "lottery," either in the majority opinion or in the dissenting opinion,

there was to be found the requirement that to constitute a lottery there must be a hazard of something tangible of value paid or agreed to be paid by the player in consideration for the privilege of participating in the game or scheme in which there was a chance to win a much larger amount. A lottery has been defined as a sort of gaming contract by which for a valuable consideration one may by favor of the lot obtain a prize of value superior to the amount or value of that which he risks. See American Encyclopedia. In Commonwealth v. Wall, (Mass.), 3 N. E. (2d) 28, the Supreme Judicial Court of Massachusetts had under consideration judgment of conviction of one charged with the offense of being concerned in setting up a lottery for money, and it was shown that the alleged lottery complained of was the operation by a moving picture theatre of what is known as "Bank Night." There the Court said (page 29) :

"We agree with the defendant that the essence of a lottery is a chance for a prize for a price. Commonwealth v. Wright, 137 Mass. 250, 50 Am. Rep. 306; Commonwealth v. Sullivan, 146 Mass. 142, 15 N. E. 491; Commonwealth v. McClintock, 257 Mass. 431; 154 N. E. 264; Commonwealth v. Ward, 281 Mass. 119, 183 N. E. 271; Commonwealth v. O'Connell (Mass.) 200 N. E. 269; State v. Clarke, 33 N. H. 329, 335, 66 Am. Dec. 723; Post Publishing Co. v. Murray (C. C. A.) 230 F. 773. The words used in Commonwealth v. Mackay, 177 Mass. 345, 58 N. E. 1027, were not intended as a complete definition. 'One may give away his money by chance, and if the winner pays no price there is no lottery. 'Price' in this connection means something of value and not the formal or technical consideration which would be sufficient to support a contract. Yellow-Stone Kit v. State, 88 Ala. 196, 7 So. 338, 7 L. R. A. 599, 16 Am. St. Rep. 38; Hull v. Ruggles, 56 N. Y. 424, 427; Chancy Park Land Co. v. Hart, 104 Iowa 592, 595, 73 N. W. 1059. On the other

hand, a game does not cease to be a lottery because some, or even many of the players, are admitted to play free so long as others continue to pay for their chances. Glover v. Maloska, 238 Mich. 216, 219, 213 N. W. 107, 52 A. L. R. 77; State v. Eames, (N. H.) 183 A. 590, 592. So here the test is not whether it was possible to win without paying for admission to the theatre. The test is whether that group who did pay for admission were paying in part for the chance of a prize. The jury could disregard all evidence introduced by the defendant favorable to him. They could take a realistic view of the situation. They were not obliged to believe that all the ingenious devices designed to legalize this particular game of chance were fully effective in practical operation. An important feature of the plan was the necessity that the person whose number was drawn should appear at once and claim the deposit. The time allowed for appearance was entirely within the control of the defendant. No definite time seems to have been fixed. A participant inside the theatre would have the advantage of immediate presence in a place of comfort. He could hear the number and the name read. He could identify himself at once. A participant outside the theatre must wait in discomfort in the hope that if his name should be drawn within he would be notified and would hear the call soon enough to crowd through toward the front of the theatre within such time as might be allowed. The object of the defendant was to fill the theatre, not the lobby or the sidewalk. We think the jury could find that the unusual crowds which completely filled the theatre on 'Bank Night' paid to come in partly because they had, or reasonably believed they had, a better chance to win the prize than if they had stayed outside, that they paid their money in part for that better chance, and that the scheme in actual operation was a lottery. There was no

error in denying the defendant's motion for a directed verdict.

"Our conclusions of law as to 'Bank Night' are not in conflict with those reached by the Supreme Court of New Hampshire in State v. Eames, 183 A. 590. The difference between the cases is that the New Hampshire court on agreed facts, held that 'free participation is a reality.' We think the jury in this case could find that it was not a full and complete reality on as favorable a basis as paid participation. Much the same can be said of State v. Hundling, (Iowa) 264 N. W. 608. In Central States Theatre Corporation v. Patz, (D. C.) 11 Fed. Supp. 566, 'Bank Night' was found to be a lottery. See also People v. Miller, 271 N. Y. 44, 2 N. E. (2d) 38; State v. Danz, 140 Wash. 546, 250 P. 37, 48 A. L. R. 1109; Maughs v. Porter, 157 Va. 415, 161 S. E. 242, and Willis v. Young & Stembridge, (1907) 1 K. B. 448."

In State v. Eames, 87 N. H. 477, 183 Atl. 590, much the same question was presented. In that case, however, the statute defining lottery was the controlling factor. The enunciation by the court, however, is persuasive. There the court said:

"The problem presented by 'Bank Night' and similar schemes is to determine whether it is an evasion of the statute or an avoidance of it, and this question is essentially one of fact. In answering this question we do not propose to close our eyes to reality. The test by which to determine the answer to this question is not to inquire into the theoretical possibilities of the scheme, but to examine it in actual practical operation. If, as the state contends in its brief, although this contention does not appear to be borne out by the agreed facts, 'the great majority of people pay for such privilege,' then it is an evasion and as such is not to be countenanced. As we understand the actual situation of

this case, however, free participation is a reality If this is so, then, regardless of the motive which induced the defendant to give such free participation, the scheme is not within the ban of the statute. Violation is shown only when, regardless of the sublety of the device employed, the state can prove that, as a matter of fact, the scheme in actual operation results in the payment, in the great majority of cases, of something of value for the opportunity to participate."

In Central States Theatre Corporation v. Patz, *et al.,* 11 Fed. Supp. 566, District Judge Dewey said:

"It seems to me that under this situation the plaintiff corporation is conducting a lottery. The elements necessary to constitute a lottery are: First, a prize; second, a chance; and third, a consideration. The plaintiff corporation admits the first two elements are present, but denied that there is any consideration paid by any one on the prize itself. I am unable to agree with this. While the registration book may be open to the public generally, it is within the foyer of the theatre, and very few people would be presumptuous enough to enter the theatre, register and not buy a ticket for the entertainment. The very purpose of the registration book being within the foyer of the theatre is to induce people to enter the theatre. Also that part of a scheme which permits a person to participate in the result of the drawing, if any, by not being inside of the theatre, but on the outside, is a subterfuge, as the drawing is at 9 o'clock at night and the percentage of people who would stand outside and wait for the drawing at that time must be comparatively few. The question whether or not there is a paid consideration for the opportunity to win a prize necessary to constitute a lottery is a question of fact which must be determined from the facts and reasonable deductions and inferences to be drawn therefrom in each case. There can be no question that if a

person wants to give a prize in appreciation of patronage, he should have the right to do so.

"In this case there was an admission charge to the theatre, and the question of fact, it seems to me, is whether or not from this admission charge the scheme and plan was. to deduct a certain percentage and use this fractional fee to pay or offset the loss which might be occasioned by the $150 prize. If that was the intention, I can see no reason why it would not be a lottery. Here there was a carefully planned scheme to appeal to the cupidity of the public and the spirit of gambling and speculation, carrying with it the attendant detrimental results which were intended to be prohibited by the statutes making gambling and lottery offenses, and at least the scheme is unfair and contrary to public policy.

"Taking it by its four corners, which the plaintiff insists the court should do in determining the issues of the case, it is very apparent that the increase in the attendance is from those persons who are interested in the drawing and not in the picture, and that they have paid their entrance fee primarily in the hope of being successful on the wheel of fortune. It may be that this number is small in comparison to the whole, but, if it is a lottery as to a few, or a lottery comparatively small in its consideration, it is a lottery nevertheless."

So it appears by the weight of authority in this country that the scheme known as "Bank Night" may be conducted as a lottery or it may be conducted in such manner that it is not a lottery.

On the fact of the declaration it is not made to appear that it is a lottery because allegations necessary to show that the plan or scheme referred to when put into operation constituted a lottery are lacking. See State v. Eames, *supra.*

It will be observed that the statement has often been made that whether or not the plan or scheme as carried out by

those operating Bank Night constitutes a lottery is a jury question. This is true in the sense in which the statement is applied. But whether or not the operation of such a scheme or plan constitutes a lottery under a given state of facts is a question of law. Stated in another way, we may say that whether or not the perpetration of certain stated acts under certain stated conditions constitutes the conducting of a lottery is a question of law for the courts to determine, while whether or not the alleged acts were perpetrated under the alleged conditions is a matter of fact which may be determined by a jury or in chancery by the chancellor.

When this cause goes back to the lower court and additional pleadings are filed the question of whether or not the transaction complained of constitutes a lottery may be further presented or, upon the trial, if there should be a trial, it may develop that the transactions constituted a lottery and that the plaintiff is thereby barred from recovery.

We only hold here that the declaration on its face states a cause of action and does not allege sufficient facts to affirmatively show that the involved transaction constituted a lottery.

For the reasons stated, the judgment is reversed and the cause remanded with directions that it be returned to the rolls and further proceedings be had in accordance with law and practice.

So ordered.

TERRELL, C. J., and WHITFIELD, BROWN and CHAPMAN, J. J., concur.