SEBRING, Justice.
Margaret Beaumont filed a complaint against Malvina Barnes, and one Harry Winston, to recover upon a written indemnification agreement executed by them. In the complaint Mrs. Beaumont alleged, in substance, that on September 6, 1951, after several weeks’ solicitation by. Winston, she forwarded to a New York stock brokerage firm, at his behest, the sum of $5,000 to be used by him in purchasing corporate stocks and options or “calls” on her account, with the understanding that Winston should have . full and complete control over all transactions, free from any interference by Mrs. Beaumont, in the exercise of his discretion, and that the profits realized from the purchases would be split between them.
It was further alleged in the complaint that the “calls”' subsequently purchased by Winston on her account declined in value; “that plaintiff would not accept the verbal reassurance of * * * Winston, and had determined to take steps to terminate the relationship existing between the plaintiff and the defendant, Harry A. Winston, and thereupon, in consideration of the fore-bearance of the plaintiff, the defendants, Harry A. Winston and Malvina H. Barnes, jointly and severally in writing indemnified and guaranteed the plaintiff against any loss in the purchase of the aforesaid ‘calls’ * * $ »
Attached to the complaint was a copy of the indemnification agreement, in the form of a letter addressed to Mrs. Beaumont and reading as follows:
“With reference to the 200 Calls Cities Service Common at 118 and the Calls on 200 Atlantic Refining Company Common at 80% in your account at Walston, Hoffman & Goodwin, which Harry Winston purchased for you on your direct authorization to him to do so, with the distinct understanding that Mr. Winston had no financial- interest'in it, we do hereby guarantee you against any loss in the above purchase, with the understanding that all of the profit belongs to you.
“In the event 'that you should decide to use the remaining $2100 in the account to purchase additional options, the guarantee of ours is extended to cover the new purchases as well. ' ''
'“/s/ Harty'A. Winston
/s/ Malvina H. Barnes”
*562 Also attached to the complaint was the following’ hill of particulars showing the details of losses incurred by Mrs. Beaumont in the transaction:
September 11, 1951 — Purchase of two calls on 100 shares of Atlantic Refinery Co. at $625.00 each $1,250.00
Tax 11.00
September 11, 1951 — Purchase of two calls on 100 shares of Cities Service Co. at $825.00 each 1,650.00
Tax 9.20
October 10, 1951 — Purchase of four calls on 100 shares each of St. Louis & San Francisco Rwy. at $250.00 each 1,000.00
Tax 40.00
October 10. 1951 — Purchase of 100 shares of St. Louis & San Francisco Rwy. at 30% $3,075.00
Brokerage Fee 25.38
3,100.38
Value February 5, 1952 at $23.00 2,300.00
Loss in Value 800.38
Total Loss $4,760.58
The defendant Winston was severed as a party to the suit because of the inability of the plaintiff to obtain service of process on him, and the plaintiff proceeded against Malvina Barnes as sole defendant. In due course, Mrs. Barnes filed her answer denying liability.
After the answer was in, the plaintiff moved for a summary judgment in her favor. At a hearing on the motion, the trial court made a finding, based upon the pleadings, depositions and affidavits in the cause, that the question of whether there was sufficient consideration to support the indemnification agreement, as against Mrs. Barnes, was one that should be determined by a jury.
After these findings had been made, both parties waived a jury trial and agreed to submit the cause to the trial court for depositions and affidavits. Subsequently, the trial court entered a final judgment on the merits, in which it found, as a matter of law, that the indemnity agreement evidenced by the letter of September 6, 1951 was not sufficiently comprehensive to include an outright purchase of stocks, as distinguished from a purchase of “calls,” and therefore the last item of the bill of particulars, for loss in connection with the purchase of stocks in the St. Louis & San Francisco Railway, in the amount of $800.-38, should be disallowed. As to the remaining allegations of the complaint the trial court held that they were “sustained by the proof; that there was an ample consideration for the execution of the indemnity agreement, and that plaintiff is entitled to recover for the remaining items of the bill of particulars, with interest.”
We find no real controversy between the parties relative to the events leading up to the institution of suit, or as to the respective dates of the various transactions upon which the suit is bottomed. As appears by the record, Mrs. Beaumont forwarded her first check to the brokerage firm on September 6, 1951, in the amount of $5,000. Although the indemnity agreement bears the date of September 6, 1951, it is admitted in the record that it was in fact written and executed three days later, and that the calls listed in the first two items of the bill of particulars, in the aggregate sum of $2,-900, had already been purchased when the agreement was made. It appears, there *563 fore, that when the agreement was actuálly entered into by the parties, the balance of cash in the account was, as stated in the letter, approximately $2,100, and that transactions thereafter, so far as material in this 'litigation, were, roughly, as follows:
Date Deposits Purchases Sales Balance
Sept. 9 $2,100.00
Oct. 5 $2,500.00 4,600.00
Oct. 8 $4,812.50 (outright purchase of stock, not calls) -212.50
Oct. 10 $1,825.00 (rec’d from sale of stock) 1,612.50
Oct. 10 1,000.00 (for calls) 612.50
Out of this factual situation, two questions arise upon the appeal: (1) Was there any legal consideration for the execution of the indemnity agreement by Mrs. Barnes ? and (2) Did the court err in allowing recovery for losses in connection with the $1,000 purchase of calls on October 10, in view of the plaintiff’s own affidavit before the court showing that before that date the fund specified’ in the indemnity agreement as “the remaining $2,100” had been entirely depleted by outright purchase of stock as to which the indemnity did not extend?
Relative to the first question, we find ample support for the view of the trial judge that Mrs. Beaumont’s forbearance, as alleged in her complaint and supported by her deposition, constituted under the circumstances a ■ sufficient 'consideration for the execution of the indemnity agreement by both Mr. Winston and Mrs. Barnes. Williston on Contracts, Rev.Ed., Vol. 1, section 135 et seq.; Corbin on Contracts (1950), Vol. 1, section 135; 17 C. J.S., Contracts, § 103b; Dorman v. Publix-Saenger-Sparks Theatres, Inc., 135 Fla. 284, 184 So. 886, 120 A.L.R. 403; Henderson v. Kendrick, 82 Fla. 110, 89 So. 635. The obligation assumed by Mrs. Barnes and Winston was joint and several, and when Mrs. Beaumont continued her arrangement with Mr. Winston, permitting •him to retain the calls in question and make other purchases on her account, it is apparent that she did so in reliance (to her detriment, it now appears) upon the promise of the' indemnitors. Under this view, it is immaterial that the calls mentioned in the first paragraph of the agreement had already been purchased'at the time the indemnity agreement was executed; and the above conclusion does riot conflict in anyway with the principle that “Where the consideration in a contract is past, no valid and binding contract comes into existence.” Pink v. Meyer, 159 Misc. 542, 288 N.Y.S, 16, 17. Williston, supra, section 142.
As to the second question, it seems, clear from the record that “the remaining-$2,100.00” mentioned in the agreement be-tween the parties was invested in the purchase of stock, as opposed to calls; and that the subsequent $1,000 purchase of. calls, on October 10 was made not from this $2,100 item but from other funds coming into the account. Inasmuch as the agreement of indemnity, by its plain terms, was, to. extend only to cover the purchase of calls with -that specific $2,100, and- no,t stocks o-r other securities, the judgment rendered in favor of the plaintiff was excessive, in that it included an item not covered by the agreement. People’s Saving Bank & Trust Co. v. Landstreet, 80 Fla. 853, 87 So. 227; Pincus v. Memphis Furniture Mfg. Co., 99 Fla. 650, 126 So. 913.
It follows from the conclusions reached that the judgment appealed from should be *564 affirmed in pant and reversed in part and the cause remanded with directions that a judgment be entered in conformance with this opinion and judgment.
It is so ordered.
ROBERTS, C. J., and TERRELL and MATHEWS, JJ-, concur.