140 So.2d 139 (1962)
LAKE SARASOTA, INC., et al., Appellants,
v.
PAN AMERICAN SURETY CO. et al., Appellees.
No. 2504.
District Court of Appeal of Florida. Second District.
April 6, 1962.
Rehearing Denied May 4, 1962.
*140 Henry P. Trawick, Jr., of Kirk, Pinkerton, Sparrow & Trawick, Sarasota, for appellants.
Burns, Middleton, Rogers & Farrell, Palm Beach, for appellee Pan American Surety Co.
Williams, Parker, Harrison & Dietz, Sarasota, for appellees, James H. Pierce, F.L. Rousselle, Mark J. Emden, Leland E. Smith, Harold Mumma, and Fred B. Atherton, as surviving directors of Azalea Homes, Inc., and Mark J. Emden and James H. Pierce, Individually.
Schultz & Cleary, Bradenton, for appellee Manatee County.
SMITH, Judge.
Pan American Surety Co., a Florida corporation authorized to do a surety business in the State, hereinafter referred to as "Surety", filed its complaint for declaratory decree against the defendants Lake Sarasota, Inc., a Florida corporation, hereinafter referred to as "Sarasota", and Manatee County, a political subdivision of the State of Florida, hereinafter referred to as "County", and James H. Pierce, F.L. Rousselle, Mark J. Emden, Leland E. Smith, Harold Mumma and Fred B. Atherton, as surviving directors and statutory trustees of Azalea Homes, Inc., a dissolved Florida corporation, hereinafter referred to as the "Trustees", and the corporation is hereinafter referred to as "Azalea", and against Leonard W. Tanner, hereinafter referred to as "Tanner", and against Manatee National Bank, a national banking corporation, as trustee for the shareholders of Azalea, hereinafter referred to as "Bank," and against James H. Pierce and Mark J. Emden, hereinafter referred to as "Pierce and Emden."
The complaint alleges that on February 20, 1957, Sarasota and the Surety, as principal and surety respectively, made, executed and delivered to the County, a bond which, as subsequently amended, was in the principal amount of $142,346.12. The bond was given to the County under the provisions of Chapter 30958, Sp.Laws of Florida, Acts of 1955, which requires that if completion of any improvements is required as a condition precedent to final approval of a subdivision plat of lands, then the County may accept a bond providing for and securing to the public the actual construction and installation of the required improvements within a period expressed in the bond. The condition of the bond was that the principal, Sarasota, shall in all respects carry out, construct, erect and build the required improvements enumerated in the bond, they being in general, the surfacing of all streets shown on the plat to a width of at least 20 feet with the type of materials and the method of application therein stated, and the installation of adequate provisions for drainage of all surface water, all according to a proposed plat of lands known as Riverdale Subdivision. On the date of the bond, the *141 County approved a plat of Riverdale Subdivision which was filed in the public records of the County in Plat Book 9, Page 76. The plat was executed by Azalea as the owner despite the fact that Azalea had been dissolved as a corporation. On the same day, there was recorded a deed from the Trustees conveying substantially all of the lands encompassed within the plat of Riverdale Subdivision to Tanner and simultaneously Tanner gave to the Trustees a purchase money mortgage on the lands described in the deed in the principle sum of $740,000.00. The Trustees assigned the mortgage to the Bank. In 1959, the Bank foreclosed the mortgage, and at the sale, it purchased all of the property described in the mortgage, excepting only a relatively few lots in Riverdale which had been released from the lien of the mortgage. The Bank then conveyed all of the property that it received in the foreclosure sale to Emden and Pierce, who were the owners of a majority of the stock of Azalea. Subsequently, the County notified the Surety that the principal on the bond had neglected and failed to carry out the conditions of the bond and it demanded that the Surety perform.
The Surety then alleged that the bond was void for lack of consideration because Sarasota was not the owner of the lands subdivided and, therefore, no privity existed between Sarasota and the County and that since the principal on the bond had no obligation to the County, then the Surety had no obligation. In the alternative, the Surety alleged that Tanner was an indemnitor of the Surety by written indemnification agreement, and, as a further alternative, the Surety alleged that at the time the proposed plat was being considered by the County, Azalea was the owner of record of the lands and that Azalea and its Trustees desired that a plat be approved for filing and desired to avoid any obligations on their part; that they conspired and agreed with Sarasota and Tanner to accomplish this avoidance by having Sarasota execute the bond as principal, thereby enabling the owners of the property, Azalea, to have the plat approved and filed, but thereby escaping the burden of being a principal on the bond; and that in this fashion Azalea and its Trustees were able to sell the property to Tanner for a greater price than would have been obtained had such plat not been approved. The scheme was aided and abetted by the fact that Tanner, Sarasota, and the County were all represented by the same attorney, who was also an officer of Sarasota; that if the Surety was required to build the improvements in the subdivision, that this would benefit the Trustees and particularly Emden and Pierce and permit them to capitalize on the conspiracy and fraud and give them an unjust, inequitable and unconscionable benefit and unjust enrichment.
The defendants answered in general denying the allegations as it concerned each. The County counterclaimed against the Surety and Sarasota and alleged that in consideration of the bond, the County approved the plat of Riverdale and that Sarasota as principal agreed to install the improvements in Riverdale according to the County's designated specifications; that it had failed to do so; and that the Surety had failed to pay the amount of the bond and prayed for judgment. Sarasota answered the counterclaim of the County and then cross-claimed against Emden and Pierce, alleging that by their having acquired title to most of the lands involved, they would be unjustly enriched at the expense of Sarasota and that the plat of Riverdale should be vacated, or if performance of the bond is required, Sarasota should have a lien on the property owned by Emden and Pierce for the cost of the improvements to their property.
The Surety filed its motion for summary final decree, and the Trustees moved for summary final decree. Depositions and supporting affidavits were filed by the parties and upon hearing, the Court entered its summary final decree which states:
"* * * At such hearing all parties agreed that there was no controverted *142 issues of fact and the cause should be decided as a matter of law.
"It is admitted by the plaintiff that they have no proof of fraud on the part of Azalea Homes, Inc. * * *."
In their briefs, Sarasota and Tanner first argue that it is apparent from the record that there are controverted issues as to material facts and that they did not agree with the Court as recited in the order. This recital in the decree comes to us under a presumption of its correctness. It is the duty and responsibility of the attorneys in a cause to see that the orders entered by the trial court are in proper form and substance and that they correctly recite the record. Any incorrect statements made in any order should be promptly brought to the attention of the court. Florida Appellate Rule 3.6l, 31 F.S.A., provides that where there is a question as to whether or not the record on appeal truly discloses what occurred in the lower court, then the question shall be submitted to and settled by the lower court and the record conformed accordingly. Since this was not done, this question is foreclosed by the recital in the decree.
The decree further finds and orders in effect that:
(a) The County was induced by the bond to approve the plat and that this is adequate consideration for the bond.
(b) That the purpose of the bond is twofold: one is to protect the County by seeing that those who benefit from the sale of land provide a minimum of conveniences to the public by way of roads and drainage that otherwise the County would be required to furnish, and the other is to protect the public and to insure to purchasers the promise of the subdivider to furnish the improvements for which the public pays in the purchase price.
(c) That the Court will require the fulfillment of the promise to furnish the contemplated improvements to the property owners who purchased lots in reliance thereon, but that as to the lots in the subdivision which have never been sold to the public, there are no owners rights to protect and the County would not be detrimented by the failure to furnish the improvements.
(d) That the County has the right and obligation to furnish the promised improvements to only such parts of the subdivision in which lots have been sold to the public, including an access road to the public highway and that Sarasota, the Surety, and Tanner, the indemnitor are liable under their bond for the pro-rata contract cost thereof.
(e) The cause was dismissed as to Azalea, the Trustees, the Bank, and Emden and Pierce.
We affirm the finding of the court that the bond was a valid and enforcible obligation of both the principal, Sarasota, and the Surety because of the fact that the consideration for the bond was the actions taken by the County in approving the subdivision plat based upon the furnishing to it of that bond. The consideration required to support a contract need not be money or anything having monetary value, but may consist of either a benefit to the promisor or a detriment to the promisee. It is not necessary that a benefit should accrue to the person making the promise. It is sufficient that something of value flows from the person to whom it is made, or that he suffers some prejudice or inconvenience and that the promise is the inducement to the transaction. Dorman v. Publix-Saenger-Sparks Theatres, 1938, 135 Fla. 284, 184 So. 886, 120 A.L.R. 403.
We affirm the findings of the Chancellor to the effect that the purpose of the bond is to protect the County, to protect the public, and to insure to purchasers the promise of the subdivider to furnish the improvements contemplated in their purchase of a lot in the subdivision. However, we find that the court did not carry through with this finding by decreeing the relief *143 which such a finding requires. Under the terms of Chapter 30958, Sp.Laws of Florida, Acts of 1955, one of the stated purposes of the act is to enable the County to protect the general public and it, therefore, follows that the Chancellor should have granted the relief sought by the County in its counterclaim against the Surety and Sarasota by finding that under the terms of the bond, the County had the right to require the construction of all of the contemplated improvements in the subdivision which were the conditions of the bond and that the costs thereof was first the obligation of the principal on the bond, Sarasota, and secondly, the obligation of the Surety with the right of the Surety to be reimbursed by Tanner, the indemnitor of the Surety. We find that the Court erred in limiting its requirement to furnish the contemplated improvements only to the property owners who purchased lots in reliance thereon and by not requiring the construction of all of the contemplated improvements. One of the preliminary statements in the bond is:
"* * * Whereas the above bounden Principal (Sarasota) * * * has agreed * * * to install the improvements * * *."
The construction of drainage facilities and a paved surface on a street at intervals only where they abut a lot here and there is impractical and would be of little benefit. The condition of the bond is to construct all of the contemplated improvements and is not limited to construction of the improvements which abut on a lot sold to the public.
This record clearly discloses that as a part of the sale by the Trustees to Tanner the Trustees participated in the proceedings enabling Tanner to secure the County's approval of the subdivision plat and that the platting of the lands was contemplated in the sale and the land owners benefited thereby. The record further establishes the fact that Sarasota, the principal on the bond, received no consideration in the transaction. It is also important to note that the subdivision plat was, in fact, executed by Azalea; that the Trustees were acting for Azalea; that Emden and Pierce were two of the Trustees; that by foreclosure of the purchase money mortgage for the benefit of the Trustees, Emden and Pierce became the owners of the greater part of the lots in the subdivision; and that Emden and Pierce were the owners of a majority of the stock of Azalea. These circumstances, plus the fact that there was no obligation on the part of Sarasota or the Surety to Emden and Pierce, would give them an unconscionable benefit and unjustly enrich them so that an equitable lien should be impressed by the court upon all of the lots in the subdivision owned by Emden and Pierce in order to require the payment by them of their pro-rata share of the costs of the construction of all of the contemplated improvements in the subdivision. 53 C.J.S. Liens § 4; Jones v. Carpenter, 1925, 90 Fla. 407, 106 So. 127, 43 A.L.R. 1409.
The trial court is directed to determine the total costs of constructing all of the required improvements of the subdivision as contemplated in the bond. Then add together the total lineal front footage of all lots in the subdivision, computing a corner lot as having two fronts, and then divide the total number of front feet into the total cost, thereby arriving at the lineal front foot cost of the improvements. Then, as to each lot, multiply the lineal foot cost by the front footage in that lot, thereby arriving at the total cost for each lot, and add together the total per lot cost of all of the lots owned by Emden and Pierce, thereby arriving at their pro-rata share of the total cost. The difference between their pro-rata share and the total cost would be the pro-rata share of the cost of the contemplated improvements to be borne by Sarasota, as principal on the bond, and the Surety's liability would be secondarily in the same amount and Tanner's liability as indemnitor to the Surety would be the same as the liability of the Surety. The liability of the Surety and Tanner may not exceed the principle amount of the bond. Each party's share of the pro-rata costs should be paid *144 into the Registry of the Court for the use and benefit of the County in constructing the improvements.
Since subsequent to the complaint, but prior to the decree, the Bank had conveyed all of its interest in the property to Emden and Pierce, and since the Bank was acting only as Trustees for the shareholders of Azalea, and in view of the fact that no other relief was sought against the Bank other than the equitable lien on the land, that part of the decree dismissing the cause as to the Bank is affirmed; and upon the same reasoning, the decree is affirmed as to the dismissal as to Azalea and its Trustees. The decree should retain jurisdiction of the cause and the parties for the purpose of enforcing its terms.
The decree is affirmed in part and reversed in part.
SHANNON, C.J., and WHITE, J., concur.