The Honorable Bradley E. King State Attorney, Fifth Judicial Circuit 19 Northwest Pine Avenue Ocala, Florida 32670
Dear Mr. King:
You have asked for my opinion on the following questions:
1) Does a real estate promotional "marketing concept" program where a fixed sum is contributed by participating sellers into a fund held in trust by the real estate company sponsoring the program, and the fund is distributed by a random drawing from the names of those realty companies and salesmen who have sold properties involved in the program, constitute an illegal lottery? 2) Does a real estate promotional "marketing concept" program where a fixed sum is contributed by participating sellers into a fund held in trust by the real estate company sponsoring the program, which fund is distributed to the realty company or salesman with the majority of property sales under the program, constitute an illegal lottery?
In sum:
1) A real estate promotional "marketing concept" program where a fixed sum is contributed by participating sellers into a fund held in trust by the real estate company sponsoring the program, which fund is distributed by a random drawing of the realty companies and salesmen who have sold properties involved in the program constitutes an illegal lottery.
2) A program where a fixed sum is contributed by participating sellers into a fund held in trust by the real estate company sponsoring the program, which fund is distributed to the realty company or salesman with the majority of property sales under the program, does not constitute a lottery inasmuch as the skill of the realty company or salesman predominates over the element of chance.
Question One
Under the "10K Promotion" plan, a seller listing his property with the realtor sponsoring the program agrees to pay a $250 fee when his property is sold. All other participating realtors are then informed that the property is part of the 10K Promotion. The first realtor to sell the listed property gets to place his name into an account along with the $250 collected from the seller. When the account reaches $10,000 a drawing is held from the names of realtors/salesmen who have sold houses included in this promotion and the winner receives the $10,000.
Lotteries other than those operated by the state are generally prohibited by the State Constitution and by statute.[1] Neither s.849.09, F.S., which prohibits lotteries, nor the Constitution defines "lottery."[2] The term has, however, been defined through case law to include three elements: (1) a prize; (2) awarded by chance; (3) for consideration.[3]
The 10K Promotion plan would appear to satisfy the first two elements of a lottery. The $10,000 prize is awarded by chance through a random drawing of those made eligible by sale of one or more of the listed properties. Only a sale of every one of the properties under the program would eliminate the element of chance. Thus, chance appears to be the predominant factor in selection of the winner, although salesmanship and the ability to sell more units may increase one's chances of winning.[4]
Consideration, for purposes of a lottery, need not involve money or anything of monetary value; rather, any consideration sufficient to establish a simple contract is adequate.[5] It may consist of either a benefit to the promisor or a detriment to the promisee. However, it is not necessary that a benefit accrue to the promisor as long as something valuable flows from the person to whom the promise is made or that he suffer some prejudice or inconvenience with the promise as an inducement to the trans-action.[6] There is consideration if the promisee, in return for the promise, does anything which he is not bound to do, or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor.[7]
Under the 10K Promotion plan, there would appear to be a clear benefit to the realtor promoting the program which receives an increase in listings because of the additional sales incentive motivating prospective sellers, and from the percentage of each sale paid to the listing realtor.[8] The fact that the sponsoring realtor does not contribute the prize money does not alter the benefit the sponsoring realtor receives.
Furthermore, there is the anticipated increased sales effort generated by the real estate companies/salesmen alerted to the program and the subject properties, perhaps to the detriment of other properties not under the program. The basic premise of the program is that salesmen will be more motivated to sell the subject properties. These efforts necessarily involve time, travel, and expense, which would likely be invested in other ways, including, perhaps, more vigorous sales efforts on behalf of properties listed by the salesman's own company.
Thus, sufficient consideration appears to exist under the 10K Promotion plan such that in conjunction with the other two elements already discussed, the promotion would constitute a lottery. A similar motivational tool where salesmen were given a chance to win a prize in a drawing for each sale of a sponsor's product was considered by this office to be a lottery because a salesman would "expend extra effort in selling the product" or "would be induced to attempt to sell the appliances of the sponsoring firm in preference to those of the other firms."[9]
Accordingly, I am of the opinion that the 10K Promotion plan constitutes a lottery.
Question Two
Under the "Bonus Program" plan, the same basic rules of the 10K Promotion plan apply except that the proceeds of the promotion are not distributed until 44 "Bonus Program" properties have been sold. At that time, the accumulated $11,000 is distributed to the realtor/salesman who has sold the most of the listed properties. In case of a tie, the proceeds are divided among those tied.
While the elements of a prize and consideration previously discussed in Question One are applicable to the Bonus Program, the lack of a showing that the element of chance predominates in awarding the prize precludes a finding that this promotion plan is a lottery. The $11,000 award is based upon the salesmanship skill and perseverance of the winner in tallying more sales than his competitors. The skills involved are no less evident than those involved in scoring highest in a game of pool;[10] or assembling a jigsaw puzzle.[11] In each of the above situations, this office found that skill predominated over chance so as to preclude a lottery finding.
Accordingly, I am of the opinion that the Bonus Program described above does not constitute a lottery.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tcs
[1] Sections 7 and 15, Art. X, State. Const.; s. 849.09, F.S.
[2] M. Lippincott Mortgage Investment Co. v. Childress,204 So.2d 919, 921 (1 D.C.A. Fla., 1967); Blackburn v. Ippolito,156 So.2d 550, 553 (2 D.C.A. Fla., 1963), cert. denied, 166 So.2d 150 (Fla. 1964).
[3] Little River Theatre Corporation v. State ex rel. Hodge,185 So. 855 (Fla. 1939); Dorman v. Publix-Saenger- Sparks Theatres,184 So. 886 (Fla. 1938).
[4] Attorney General Opinion 76-131.
[5] Blackburn, supra at 554-555. But see, Lee v. City of Miami,163 So. 486, 488 (Fla. 1935).
[6] Blackburn, supra at 552-553; Dorman, supra at 889.
[7] Id.
[8] Under the plan you described, only properties listed through the realtor sponsoring the program appear eligible to participate although any salesman/real estate company may sell the properties and gain a chance at the prize.
[9] Attorney General Opinion 60-117.
[10] Attorney General Opinion 51-469.