## POST PUB. CO. v. MURRAY.

### (Circuit Court of Appeals, First Circuit. March 7, 1916.)

### No. 1145.

1. POST OFFICE ☞14—UNMAILABLE MATTER—"LOTTERY SCHEME"—"GIFT ENTERPRISE."

Penal Code (Act March 4, 1909, c. 321) § 213, 35 Stat. 1129 (Comp. St. 1913, § 10383), provides that no newspaper or publication of any kind containing any advertisements of any lottery, gift enterprise, or scheme of any kind offering prizes dependent in whole or in part upon lot or chance, shall be deposited in or carried by the mails. A newspaper advertised that its photographers would take pictures of women shoppers and publish the pictures with the heads cut off, and that $5 would be paid to each lady photographed who identified her photo. *Held*, that this was not within the statute, as the particular kind of chance involved in the advertisement did not require a parting with anything by members of the public for the prize offered, and it did not amount to a "lottery scheme," as a lottery involves a scheme for raising money by selling chances to share in a distribution of prizes, or a scheme for the distribu-

tion of prizes by chance among persons purchasing tickets, while a "gift enterprise" contemplates a scheme in which presents are given as an inducement to members of the public to part with their money.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 21; Dec. Dig. ☞14.

For other definitions, see Words and Phrases, First and Second Series, Lottery.]

2. POST OFFICE ☞14—MAILABLE MATTER—STATUTORY PROVISIONS.

As Penal Code, § 213, excluding from the mails newspapers containing advertisements of lotteries, etc., and prescribing as punishment for violations a fine or imprisonment, is a highly penal statute, it is not susceptible of a liberal construction, bringing within its prohibitions press publications not clearly within its terms.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 21; Dec. Dig. ☞14.]

3. POST OFFICE ☞14—MAILABLE MATTER—STATUTORY PROVISIONS.

The exclusion of newspapers and other publications from the mails in the exercise of executive power is highly arbitrary in its character, and can only be justified where the statute is clearly applicable to the supposed objectionable publication.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 21; Dec. Dig. ☞14.]

Appeal from the District Court of the United States for the District of Massachusetts; Frederic Dodge, Judge.

Suit by the Post Publishing Company against William F. Murray, as Postmaster. From a decree for defendant, plaintiff appeals. Reversed, with directions.

Edmund A. Whitman, of Boston, Mass. (Elder, Whitman & Barnum, of Boston, Mass., on the brief), for appellant.

Louis Goldberg, Asst. U. S. Atty., of Boston, Mass. (George W. Anderson, U. S. Atty., of Boston, Mass., Horace J. Donnelly, of Washington, D. C., and Leo A. Rogers, Sp. Asst. U. S. Atty., of Boston, Mass., on the brief), for appellee.

Before PUTNAM and BINGHAM, Circuit Judges, and ALDRICH, District Judge

ALDRICH, District Judge. This is an equity proceeding in the District Court, in which the Post Publishing Company asked to be relieved from an order of the Boston postmaster, made under direction of the Department at Washington, whereby certain issues of the Boston Post were excluded from the Boston post office and from the mails. The Boston Post is a newspaper published in Boston.

On May 1, and May 2, 1915, it published a certain advertisement in which were represented pictures of headless women shoppers. The advertisement was in part as follows:

"Attention, Ladies!

"During this week Post Photographers will take snapshots in the Busy Boston Shopping District of Fifty Women Shoppers.

"These pictures will be developed and illustrations made in the usual way, and then their Heads will be Cut off!

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"The Headless Pictures will be published—twenty-five in next Saturday's Post and twenty-five in next Sunday's Post—numbered but without names. The names will not be known to the Post Photographers.

"The Ladies Photographed are invited to identify the Headless Photos.

"A Five Dollar Gold Piece for Each Identification.

"Ladies who recognize themselves are invited to call at Room 305, third floor, 257 Washington Street, Boston, between 2 p. m. and 5 p. m. on the following Monday, May 3, Tuesday, May 4, or Wednesday, May 5, wearing the same hat and costume as when photographed. A woman representative of the Sunday Post will be present. As she will have at hand the missing heads duly numbered, she will be able to readily confirm the identifications. Five Dollars in Gold will be presented to each photographed shopper who is thus identified, but payment will be made only to the originals of the photographs. A list of identifications will be published.

"$250 for 50 Ladies Who Recognize Themselves."

Under departmental interpretation of the act of Congress in respect to lotteries, games of chance, and gift enterprises, the Post was excluded from the Boston post office and from the mails. Section 213 of the Penal Code of the United States in question is as follows, and the material provisions thereof are italicized:

"No letter, package, postal card, or circular concerning any lottery, gift enterprise, or similar scheme offering prizes dependent in whole or in part upon lot or chance; and no lottery ticket or part thereof, or paper, certificate, or instrument purporting to be or to represent a ticket, chance, share, or interest in or dependent upon the event of a lottery, gift enterprise, or similar scheme offering prizes dependent in whole or in part upon lot or chance; and no check, draft, bill, money, postal note, or money order, for the purchase of any ticket or part thereof, or of any share or chance in any such lottery, gift enterprise, or scheme; *and no newspaper, circular, pamphlet, or publication of any kind containing any advertisements of any lottery, gift enterprise or scheme of any kind offering prizes dependent in whole or in part upon lot or chance,* or containing any list of the prizes drawn or awarded by means of * * * such lottery, gift enterprise, or scheme, whether said list contains any part or all of such prizes, *shall be deposited in or carried by the mails of the United States,* or be delivered by any postmaster or letter carrier. Whoever shall knowingly deposit or cause to be deposited, or shall knowingly send or cause to be sent, anything to be conveyed or delivered by mail in violation of the provisions of this section, or shall knowingly deliver or cause to be delivered by mail anything herein forbidden to be carried by mail, shall be fined not more than one thousand dollars, or imprisoned not more than two years, or both; and for any subsequent offense shall be imprisoned not more than five years."

The District Court denied relief, and construed the advertisement as one presenting a scheme prohibited by the statute, and the petitioner appealed.

[1] It seems to us quite impossible, under the rule of strict and literal construction of the statute, to accept the advertisement in question as one containing the elements of wrong involved in the schemes against which the statute was directed. The advertisement, or scheme, in question does not seem to be like any of the kinds or types of wrong against which the act of Congress was directed. It did not present a lottery scheme, because a lottery involves a scheme for raising money by selling chances to share in a distribution of prizes—a scheme for the distribution of prizes by chance among persons purchasing tickets. It was not a gift enterprise, because a gift enterprise contemplates a scheme in which publishers or sellers give

presents as an inducement to members of the public to part with their money. Nor did it present the kind of lot or chance which the act of Congress was striking against, because the particular kind of chance involved in the advertisement in question did not require a parting. with anything by members of the public for the prize offered.

[2] Congress and the courts are cautious about placing restrictions upon the liberty of press publications, and, as the statute in question is a highly penal one, it is not susceptible of a liberal construction to the end that press publications not clearly within its terms shall be brought within its prohibitions.

[3] The exercise of executive power, like that of excluding newspapers and other publications from the mails, is highly arbitrary in its character, and can only be justified where the statute is clearly applicable to the supposed objectionable publication.

The advertisement in question, while ingenious, and rather gruesome in some of its phases, after all involved only harmless novelty, promoted probably by the radical change in women's street costume, and carried forward with the purpose of attracting attention to the newspaper and of increasing its circulation, rather than as a scheme involving direct and specific intent to induce members of the public to part with money, which seems to be a necessary element of the statute against lotteries, gift enterprises and games of chance.

Under this curious advertisement, which involved pictures of headless women in street costume, there was nothing for the woman who was curious enough to be in the shopping district at the appointed time to pay, to buy, or to lose by failure of identity, and while losing nothing in the event of failure, her gain was to depend, not upon chance, in the ordinary acceptation of that term as used in the statute, but upon the fact of identity. If she established her identity through the instrumentality of the headless picture, she was to get the $5 gold piece, and if she failed to establish her identity she lost nothing, and her comforting compensation would happily result through the satisfaction of feminine curiosity; and in the given individual instances the publisher was not to gain anything by the fact of identity or failure of identity, but was to lose if the fact of identity was established. Thus the conclusion must be that there was no special intent to cheat or induce members of the public into buying something, or paying something for a chance. Instead of being that, it was a situation in which there was a general intent and general purpose to present something which the publisher thought would be attractive, and which would catch the eye and increase the circulation of the paper. We view this curious conception more as a playful one, though slightly sportive, and as one possibly involving the idea of burlesquing a little the street costume of women, thereby attracting public attention, with the view of increasing the circulation of the publication, rather than as a deliberate scheme to wrong members of the public.

Such being the idea of the publisher, and there being little, if any, element of chance in the scheme, and whatever chance there was being one which would make the publisher the loser rather than the

gainer, and the woman the gainer rather than the loser, it would not seem to be within the class of wrongs covered by the statute. It is impossible to find in the advertisement the necessary specific intent to cheat members of the public through advertising a chance enterprise.

This advertising enterprise is so far sui generis that we get little aid from the authorities cited with respect to the statute in question. It is enough to say that they all apparently proceed upon the idea that the statute was directed against schemes which involved specific intent to induce members of the public to part with money, and schemes under which they were to get something of a value which they knew not of, and under which, as a rule, the originator of the scheme intended to chance off things at a value less than their real value.

We only refer to the interesting discussion by Chief Justice Perley, with reference to gift enterprises. State v. Clarke, 33 N. H. 329, 66 Am. Dec. 723. The federal statute, generally speaking, is in conformity with substantially similar statutory enactments in the various states, and the opinion of Chief Justice Perley is interesting, because it points out, in a very clear way, the idea that these statutes are effective against enterprises and schemes which induce or cheat members of the public into parting with their money on the idea that they are to get something through lot, chance, or expectancy, with the result, in the end, of being cheated.

We cannot view the advertisement in question as one involving the specific wrongful intent necessary to bring it within the purview of the penal statute under consideration.

The decree of the District Court is reversed, with directions for further proceedings not inconsistent with this opinion and for proceedings to the end that the relief sought shall be granted.