COMMONWEALTH *vs.* THOMAS A. O'CONNELL.

Suffolk.     February 3, 1936. — February 24, 1936.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Lottery.*

Notwithstanding G. L. (Ter. Ed.) c. 271, § 22A, as amended by St. 1934, c. 371, a game of beano duly licensed and conducted for the benefit of charity, for which a large number of "subscriptions" were sold, became a lottery within the meaning of G. L. (Ter. Ed.) c. 271, § 7, if the players, among whom only the prizes were to be distributed, were selected by chance from the subscribers.

COMPLAINT, received and sworn to in the Municipal Court of the City of Boston on November 8, 1935.

On appeal, the case was heard without a jury in the

Superior Court by *Buttrick*, J., a judge of a district court sitting in the Superior Court under statutory provisions.

*R. B. Owen,* for the defendant.

*A. F. Iovino,* Assistant District Attorney, for the Commonwealth.

FIELD, J. This is a complaint under G. L. (Ter. Ed.) c. 271, § 7, charging the defendant with being "concerned in the setting up, managing and drawing of a certain lottery." On appeal the case was heard on an agreed statement of facts by a judge sitting without a jury. The judge denied requests for rulings and a motion for a finding of not guilty, and the defendant excepted. The judge found the defendant guilty, imposed a fine, stayed further proceedings and, with the consent of the defendant, reported the case to present the questions of law arising therein. G. L. (Ter. Ed.) c. 278, § 30.

G. L. (Ter. Ed.) c. 271, § 7, provides that "Whoever sets up or promotes a lottery for money or other property of value, or by way of lottery disposes of any property of value . . . or is in any way concerned, in the setting up, managing or drawing of such lottery . . . shall be punished by a fine . . . or by imprisonment . . . ." G. L. (Ter. Ed.) c. 271, § 22A, as changed by St. 1934, c. 371, is as follows: "Nothing in this chapter shall authorize the prosecution, arrest or conviction of any person for conducting or promoting, or for allowing to be conducted or promoted, a game of cards commonly called whist or bridge or the game commonly called beano, or substantially the same game under another name, in connection with which prizes are offered to be won by chance; provided, that the proceeds of the charges for admission to, and/or participation in, such game are donated solely to charitable, civic, educational, fraternal or religious purposes; and provided, further, that said game called beano, or substantially the same game under another name, is conducted · under a license hereby authorized to be granted by the mayor of the city or the selectmen of the town in which such game is to be conducted, and upon such terms and conditions as the mayor or selectmen may prescribe."

It is not now contended by the defendant that he was not "concerned in the setting up, managing or drawing" of the enterprise described in the agreed statement of facts or that because of his good faith or his lack of specific criminal intent he is not criminally liable. On the other hand, it is not now contended by the Commonwealth that the proceeds of the enterprise were not to be donated solely to charitable purposes within the meaning of § 22A, as changed, or that if the enterprise was within this section it was not duly licensed thereunder. The facts agreed bearing on these matters, therefore, need not be recited.

The sole question for decision on the defendant's motion and requests for rulings is whether an enterprise carried on in the manner described in the agreed statement of facts as matter of law could be found to be a "lottery" within the meaning of G. L. (Ter. Ed.) c. 271, § 7, and not excluded from the application of that section by G. L. (Ter. Ed.) c. 271, § 22A, in its changed form.

A hospital which was a Massachusetts corporation voted "to conduct a charitable Mardi Gras or carnival at which a game or games of Beano would be conducted." The defendant, the vice-president of the hospital, "was in active charge of the Carnival or Festival hereinafter referred to." Ten thousand books "containing twelve 'charitable donation subscriptions' at fifty cents apiece were printed." These books "were placed in the hands of persons who were paid for disposing of the twelve subscriptions contained in each one." The hospital obtained a license "to conduct a Beano party," at a hall having a capacity of seven hundred persons, "the proceeds of the same to be used for charity." "Each charitable donation subscription under its terms entitled the holder to admission to . . . [the hall] on the occasion of the carnival up to the extent of the capacity of the hall."

"Under the plan of the carnival and Beano game as projected, twenty-five names of those who held charitable donation subscriptions were to be drawn at the time of the carnival and allotted to twenty-five young ladies who would participate in the game of Beano, as usually played, repre-

senting the individual whose name was allotted to her, and prizes would be allotted to the winners of consecutive Beano games." "The name and address of each Charitable Donation Subscriber, whether present or not . . . [were to] be put into a container." The drawings of the twenty-five names were to be made under the supervision of a certified public accountant. Charitable donation subscribers were not to be required to attend and winners of awards were to be notified by telegraph.

One third of the receipts — the "gross amount subscribed less solicitation expense" — was to be distributed in two hundred fifty cash awards, including ten awards running from twenty per cent to two per cent of one third of such receipts. The "*winner* of the 1st Game of Beano" was to "receive free the 1st award and the other 24 . . . the consolation awards," and the same routine was to be "followed through for ten consecutive games which will complete the distribution of ten major awards and 240 consolation awards."

It is apparent that the enterprise, after subscribers are obtained, consists of two elements: (a) the drawing of the names of twenty-five subscribers for whom twenty-five young women as their representatives are to play the game of Beano and (b) the playing of the game by these representatives of subscribers winning in such drawing. Each subscriber who is such a winner is entitled to ten cash prizes — ten consolation prizes at least and a larger prize in lieu of a consolation prize for each time his representative is the winner of a game of beano. The drawing of subscribers entitled to play the game of beano through their representatives and entitled also to the accompanying cash prizes, considered by itself, is clearly "a lottery for money," within the meaning of G. L. (Ter. Ed.) c. 271, § 7, and a person "in any way concerned, in the setting up, managing or drawing of such lottery" is punishable thereunder unless excepted from the application of this section by the provisions of § 22A in its present form. *Commonwealth* v. *Sullivan*, 146 Mass. 142, 145. Such a drawing of subscribers, considered by itself, is "a scheme for the dis-

tribution of prizes by chance." *Commonwealth* v. *Mackay*, 177 Mass. 345, 346. *Commonwealth* v. *McClintock*, 257 Mass. 431, 433–434.

The defendant is not, by reason of G. L. (Ter. Ed.) c. 271, § 22A, as revised by St. 1934, § 371, immune from prosecution on account of the lottery previously described because of the relation of such lottery to the game of beano to be played by representatives of subscribers winning in the drawing. The record does not show how the game of beano is to be played except as it is agreed that it is to be played "as usually played." As described in *Commonwealth* v. *Theatre Advertising Co. Inc.* 286 Mass. 405, 411, beano is a game of chance. But § 22A, as changed, applies in terms to "the game commonly called beano." As a matter of statutory construction this game "as usually played" comes within the provisions of that section and the defendant on the facts agreed is entitled to the benefit thereof so far as the game itself is concerned.

The facts agreed, however, show that the selection by chance of subscribers entitled to be represented in the game and also to share in the cash prizes is not a part of the game of beano. Only representatives of the subscribers winning in the drawing are to "participate in the game." The game is to be played by these representatives to determine, subject to limitations, the distribution among such subscribers of the cash prizes. The subscribers losing in the drawing not only are not to participate in the game but even are not required to be present personally or by representatives in the hall when the game is played. And they have no interest in the outcome of the game. The selection by chance of subscribers to participate in the game by their representatives and the consequent exclusion of all other subscribers from participation therein, personally or by representatives, is merely preliminary to the game itself.

The defendant contends, however, that the enterprise as a whole is within the protection of § 22A, as changed, because the section applies to a game of beano "in connection with which prizes are offered to be won by chance."

This contention misconceives the effect of the clause relied on. This clause was contained in G. L. (Ter. Ed.) c. 271, § 22A, as applied to the "game of cards commonly called whist or bridge," before the passage of St. 1934, c. 371. By the latter statute — passed after the decision in the case of *Commonwealth* v. *Theatre Advertising Co. Inc.* 286 Mass. 405, which held the game of beano as therein described to be a game of chance — persons conducting or promoting the "game commonly called beano," under the conditions set forth in § 22A, as changed, thereby were rendered immune from prosecution under G. L. (Ter. Ed.) c. 271, though the game as played is a game of chance and though prizes are offered in connection with it. But § 22A as changed by St. 1934, c. 371, applies to cases where prizes are offered "in connection with" the game of beano and not to other schemes for the distribution of prizes by chance carried on "in connection with" the game of beano, but not constituting a part of such game, or to prizes offered "in connection with" such schemes. Nothing in the language, history or obvious purpose of § 22A, as changed, warrants the conclusion that it was intended thereby to give immunity to schemes for the distribution of prizes by chance, not integral parts of the game of beano, merely because such schemes are carried on in more or less direct connection with this game.

It follows that there was no error in the denial of the defendant's motion for a finding of not guilty or of his requests for rulings and that the judgment must be affirmed. *Commonwealth* v. *Boston & Maine Transportation Co.* 282 Mass. 345, 346, 352.

*So ordered.*