COMMONWEALTH *vs.* JAMES WALL.

Middlesex.    May 13, 1936. — July 1, 1936.

Present: CROSBY, PIERCE, DONAHUE, LUMMUS, & QUA, JJ.

*Lottery. Evidence,* Relevancy. *Words,* "Price."

A scheme called "bank night," by which, during a performance at a theatre, a prize winner was drawn by lot from a list of names registered there and was publicly announced, part of the registrants having paid for admission to that performance and part not having done so and not being in the theatre, with a condition in either case that the winner could not get the prize unless he claimed it inside the theatre within a few minutes after the drawing, properly could be found to be a lottery under G. L. (Ter. Ed.) c. 271, § 7.

At the trial of a complaint for maintaining a lottery called a "bank night" at a theatre, it was error to instruct the jury in substance that any technical and nonvaluable consideration, "whether registration of the name or anything else," would be a sufficient price for a chance to draw a prize, so as to constitute the enterprise a lottery.

To constitute a lottery there must be payment of a price for a chance to draw a prize by some at least of the participants; incidental advantage to the promoter resulting from the operation of the lottery is not in itself a price paid by the participants.

COMPLAINT, received and sworn to in the First District Court of Eastern Middlesex on December 19, 1935, charging that the defendant "was concerned in the setting up of a certain lottery for money."

In the Superior Court on appeal, the complaint was tried before *Dowd,* J. The defendant was found guilty, and alleged exceptions.

*R. G. Dodge,* (*G. S. Ryan* with him,) for the defendant,

*F. G. Volpe*, Special Assistant District Attorney, for the Commonwealth.

QUA, J.   The defendant, manager of a moving picture theatre in Medford, was convicted of being concerned in setting up a lottery for money on December 18, 1935, in violation of G. L. (Ter. Ed.) c. 271, § 7.   None of the other cognate offences described in that section was charged. The principal question is whether the jury were warranted in finding that the plan or scheme for increasing patronage known as "Bank Night," as operated by the defendant, was a lottery.

Under this plan the theatre would deposit each week the sum of $35 in a bank.   Registration books were kept by the theatre wherein were recorded on numbered lines the names of those eligible to receive this deposit.   Every Wednesday night during the performance at the theatre and in the presence of the audience one of the names so recorded was drawn by lot and publicly announced.   The person whose name was called was entitled to come forward and claim the deposit.   If he did not appear, the deposit remained in the bank to be added to the amount available for the winner of the next week's drawing.

The Commonwealth introduced the evidence of police officers who purchased tickets and visited the theatre on December 11 and on December 18, which were successive "bank nights."   On December 11 the defendant stated that anybody could register, that it was not necessary for anybody to attend the theatre in order to win a prize, but eventually he hoped that everyone would come.   The name of one Smith having been drawn, the defendant called his number three or four times "and also called out in the lobby of the theatre."   Smith did not answer, whereupon the defendant said that $35 would be added to the amount already deposited to be drawn the next week.   On December 18 the defendant three or four times called the name corresponding to the number drawn, "and it was called on the outside."   He did not say it was a free drawing or that it was not necessary for anybody to purchase a ticket or to be in the theatre.   He made no announcement

as to how "Bank Night" was run. The person called was not present. Registration books were kept in the lobby and in the box office. Anyone except children could register. There were signs indicating that registration was free and that the purchase of a ticket to the theatre was not a prerequisite.

Evidence by and in behalf of the defendant in part tended to show the following: On December 18 the defendant announced that it cost nothing to play the game or to register, that the name of the winner would be announced outside and that if he were standing on the outside he might walk down and collect the prize. "He didn't say how long a time would be given for anyone outside the theatre to claim the prize." He usually waited four or five minutes for the person before putting on the next picture. A witness who testified that they allowed five minutes for the name to be called also testified that he left the front of the theatre after the name was called, and as he reached the back the lights went out. A "trailer" exhibited on the screen indicated that the winner must appear "within a reasonable time." On December 18 the usher announced the name outside in a loud voice. There were two hundred people crowded in the small lobby and three or four hundred on the sidewalk. They would have come in if they could. The theatre was packed inside. "Bank Night" has very much increased the attendance at the theatre. In six weeks nobody won a prize.

We agree with the defendant that the essence of a lottery is a chance for a prize for a price. *Commonwealth* v. *Wright*, 137 Mass. 250. *Commonwealth* v. *Sullivan*, 146 Mass. 142. *Commonwealth* v. *McClintock*, 257 Mass. 431. *Commonwealth* v. *Ward*, 281 Mass. 119. *Commonwealth* v. *O'Connell*, 293 Mass. 459. *State* v. *Clarke*, 33 N. H. 329, 335. *Post Publishing Co.* v. *Murray*, 230 Fed. 773. The words used in *Commonwealth* v. *Mackay*, 177 Mass. 345, were not intended as a complete definition. One may give away his money by chance, and if the winner pays no price, there is no lottery. "Price" in this connection means something of value and not the formal or technical consideration which

would be sufficient to support a contract. *Yellow-Stone Kit* v. *State*, 88 Ala. 196. *Hull* v. *Ruggles*, 56 N. Y. 424, 427. *Chancy Park Land Co.* v. *Hart*, 104 Iowa, 592, 595. On the other hand, a game does not cease to be a lottery because some, or even many, of the players are admitted to play free, so long as others continue to pay for their chances. *Glover* v. *Malloska*, 238 Mich. 216, 219. *State* v. *Eames*, 87 N. H. 477, 480. So here the test is not whether it was possible to win without paying for admission to the theatre. The test is whether that group who did pay for admission were paying in part for the chance of a prize. The jury could disregard all evidence introduced by the defendant favorable to him. They could take a realistic view of the situation. They were not obliged to believe that all the ingenious devices designed to legalize this particular game of chance were fully effective in practical operation. An important feature of the plan was the necessity that the person whose number was drawn should appear at once and claim the deposit. The time allowed for appearance was entirely within the control of the defendant. No definite time seems to have been fixed. A participant inside the theatre would have the advantage of immediate presence in a place of comfort. He could hear the number and the name read. He could identify himself at once. A participant outside the theatre must wait in discomfort in the hope that if his name should be drawn within he would be notified and would hear the call soon enough to crowd through toward the front of the theatre within such time as might be allowed. The object of the defendant was to fill the theatre, not the lobby or the sidewalk. We think the jury could find that the unusual crowds which completely filled the theatre on "Bank Night" paid to come in partly because they had, or reasonably believed they had, a better chance to win the prize than if they had stayed outside, that they paid their money in part for that better chance, and that the scheme in actual operation was a lottery. There was no error in denying the defendant's motion for a directed verdict.

Our conclusions of law as to "Bank Night" are not in

conflict with those reached by the Supreme Court of New Hampshire in *State* v. *Eames*, 87 N. H. 477. The difference between the cases is that the New Hampshire court on agreed facts held that "free participation is a reality." We think the jury in this case could find that it was not a full and complete reality on as favorable·a basis as paid participation. Much the same can be said of *State* v. *Hundling*, 220 Iowa, 1369. In *Central States Theatre Corp.* v. *Patz*, 11 Fed. Sup. 566, "Bank Night" was found to be a lottery. See also *People* v. *Miller*, 271 N. Y. 44, *State* v. *Danz*, 140 Wash. 546, *Maughs* v. *Porter*, 157 Va. 415, and *Willis* v. *Young*, [1907] 1 K. B. 448.

There was error, however, in instructing the jury in substance that any technical and nonvaluable consideration, "whether registration of the name or anything else," would be a sufficient price. We are also of opinion that the price must come from participants in the game in part at least as payments for their chances and that the indirect advantage to the theatre of larger attendance is not in itself a price paid by participants. *State* v. *Eames*, 87 N. H. 477, 480. There was no error in excluding the writing entitled "Bank Night Instructions," or in excluding evidence as to how "Bank Night" had operated at other theatres or that persons remaining outside had won prizes at those theatres. Such evidence would be likely to draw in collateral issues.

We think that in view of what has been said it is unnecessary to deal specifically with other exceptions relating to matters which are not likely to arise in the same form at another trial.

*Exceptions sustained.*