COMMONWEALTH *vs.* WILLIAM McLAUGHLIN.

Middlesex.    October 7, 1940. — November 1, 1940.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Lottery.*

Evidence at the trial of an indictment charging promotion of a lottery
warranted a finding that on nights when the defendant conducted at
his theatre a game called "Lucky," open both to patrons within and
persons outside of the theatre and admitted by him to involve a chance
for a prize, some patrons paid admission and entered the theatre in
part for a better chance to win a prize; and a conviction was warranted.

INDICTMENT, found and returned on June 4, 1940.

The case was heard by *Fosdick,* J.

*W. J. McCluskey,* for the defendant.

*A. J. DiCicco, Jr.,* Assistant District Attorney, for the
Commonwealth.

DONAHUE, J.    The defendant was convicted on an in-
dictment which charged that on May 31, 1940, he "did
set up and promote a lottery for money." (G. L. [Ter.
Ed.] c. 271, § 7.) The defendant waived a trial by jury
and the case was tried, on an agreed statement of facts,
before a judge in the Superior Court.

The defendant states in his brief that the exceptions taken
by him present the question whether there was sufficient
evidence to warrant a finding that persons who paid for
admission to the theatre paid in part for the chance of a
prize. That is the question he here argues. Certain of his
requests present that question. It is unnecessary for us
to discuss the requests individually.

The defendant owned and operated a moving picture
theatre in Stoneham. He adopted a plan referred to in
the record as the "game of Lucky," which he operated in
his theatre every Friday night in the year, and sometimes
on Wednesday nights. Persons purchasing tickets at the
box office and paying the usual admission charge of twenty-

five cents were given so called "Lucky" cards which enabled them to play the game. Between the showing of two "featured" pictures the audience was given instructions as to the manner of playing the game, and the game was then played. Numbers drawn on the stage were announced and holders of cards bearing those numbers "punch[ed] out" the numbers on their cards. The calling of numbers continued until some person had on his card five such "punch[ed] out" numbers in a row, horizontally, vertically or diagonally. Such person upon shouting "Lucky," was declared a winner. If more than one person shouted "Lucky," the first to be heard would have first choice in the selection of a prize. There were on the stage ten envelopes containing money prizes. The winner selected one of them and the game was resumed and was played in the same manner until all the prizes were won.

As announced by a sign placed at the entrance of the theatre any person, without purchasing an admission ticket and without paying anything, would upon request receive a "Lucky Card." Persons outside the theatre could hear instructions given and announcements made from the stage of the theatre by means of a public address system and could play the game. If such a person won a prize he would be permitted to enter the theatre and select it. However, from the time the defendant first started the game at his theatre, no person ever played the game from outside the theatre.

The game was played at the defendant's theatre on Friday evening, May 31, 1940, the date alleged in the indictment. The capacity of the theatre was seven hundred fifty seats. The night in question was rainy. All the seats were occupied and there were persons standing in the theatre. There were six hundred ninety-six paid admissions from the time the theatre was opened at 6:30 P.M.

The game had been played on Wednesday and Friday nights at the defendant's theatre but since May 15 only on Friday nights. On Friday nights the attendance "is and has been larger than that of any other night of the week." The defendant changed the program at his theatre

three times a week so that on Sunday, Wednesday and Friday evenings a new program was presented.

The "essence of a lottery is a chance for a prize for a price." *Commonwealth* v. *Wall,* 295 Mass. 70, 72. The defendant admits that two of these three essential elements, that is, the element of chance and the element of an offered prize, were present in the game conducted by him at his theatre. His contention is that the evidence did not warrant a finding that the element of "a price" was present.

A "price" paid for a chance to win a prize must be something of value in order that a transaction be a lottery. The indirect advantage to the defendant of a large attendance was not in itself a price paid for a chance by the patrons of the theatre. If, however, in purchasing tickets the patrons of the theatre paid in part for the chance to win a prize the defendant was conducting a lottery. *Commonwealth* v. *Wall,* 295 Mass. 70, 73. *Commonwealth* v. *Heffner,* 304 Mass. 521, 523. *Commonwealth* v. *Payne, ante,* 56.

The continued operation of the game by the defendant over an extended period of time at a considerable expense indicates that he found it profitable to conduct the game in connection with the showing of moving pictures. Otherwise he would have discontinued the game. An inference is warranted that during such period a number of the patrons came to the theatre and paid the admission charge in part for the opportunity to play the game. The attendance at the theatre on Friday nights when the game was regularly played was greater than on any other night in the week. An inference is warranted that the enlarged attendance on that night each week was due to the presence of a number of patrons who paid the admission charge in part for the afforded opportunity to play the game.

Although during the whole period of time when the game was played at the defendant's theatre nobody ever played the game from outside the theatre, there is nothing to indicate that the patrons of the theatre would likely have known of this fact. The defendant on Friday nights maintained at the entrance of the theatre a sign stating: "Anyone, whether a patron or not may play in this game without

obligation on his part." One participating in such a game from outside the theatre would obviously be at a disadvantage compared with a person playing it inside the theatre. See *Commonwealth* v. *Wall*, 295 Mass. 70, 73. The inference is warranted that some of the persons attending the theatre on Friday nights would feel that by paying for a ticket and entering the theatre their chance for winning a prize would be better than it would be if they attempted to play the game outside the theatre, and that "they paid their money in part for that better chance." *Commonwealth* v. *Wall*, 295 Mass. 70, 73.

*Exceptions overruled.*