*Northern District*
No. 6245

## FIRST FINANCE CORPORATION OF MATTAPAN

v.

## HARRY C. PORAVAS & another

Argued————1966    Decided————1966

*Present:* Brooks, P.J., Yesley, Durkin, J.J.

Case tried to *Troy, J.,* Municipal Court of the Dorchester District   No. 10,005

Yesley, J. *This is an action to recover the amount of $1190.35 alleged to be due on the sale of an Admiral color television set under a conditional sales contract* dated August 4, 1964 between Universal Industries (Universal) as the seller, and the defendants who are husband and wife as the purchaser, and assigned by the seller to the plaintiff under a non-recourse form of assignment printed on the reverse side of the seller's copy of the conditional sales contract. The price of the set was stated to be $895.00, which included an antenna and a service warranty, plus finance charges of $295.35, making a "total time price" (no deposit being required) of $1190.35, payable in 35 consecutive monthly installments of $33.06 each and a final installment of $33.25, "all payable on the same day each month commencing (date left blank)". No payments were made. The trial justice found for the plaintiff in the full amount claimed.

There was evidence that a representative of

Universal visited the defendants at their home and "presented them with a plan whereby (they) could obtain a free television set and even make some money", stating "that this was an advertising gimmick . . . . . that (Universal) would pay (them) $50.00 for every referral who purchased a television set and would pay (them) another $25.00 for every name subsequently submitted by the original referral who purchased a television set"; that the defendants were "led to believe that they would not have to pay for the television set out of their own pocket but that they would be able to pay (Universal) out of referrals earned through the plan".

It is stated in the report that "(I)n consideration for the sale of the Television set and to induce the defendants to purchase the same", Universal through its advertising department entered into a written agreement with the "defendants". The agreement, which is dated August 5, 1964, and entitled "Representative's Agreement", was introduced into evidence. It purports to be "issued to" defendant Harry C. Poravas, who signed it as "Representative". The material provisions thereof are as follows:

    "1. Representative shall submit to (Universal) the names of individuals considered by Representative to be qualified prospective purchasers of Color Television. . . .

    2. (Universal) shall pay Representa-

tive as earned commission the sum of ($50.00 for) each individual whose name is submitted by Representative who thereafter becomes a qualified equipment owning Representative for (Universal).

3. (Universal) shall pay Representative as earned commission the sum of $25.00 for each name subsequently submitted by the individuals referred to in paragraph 2 at the time they too become a qualified color Television representative with (Universal). . . .''.

There was further provision that the foregoing agreement would become effective upon signature by the.parties, the acceptance of the color television set by Poravas and the approval of Poravas' application for credit, which conditions were all met. Finally, it was stated therein that it was ''agreed that payment of compensation (under the agreement) shall not in any way affect the obligation of the Representative as set forth by the terms and conditions of the contract for the purchase of (the television set)''. All of the words of this last provision were typed in full capitals.

There was evidence that the plaintiff purchased the conditional sales contract from Universal for $894.00 cash under a non-recourse form of assignment printed on the seller's copy only; that previous to this its local manager had spoken to Poravas who said he was satisfied with the set and made no mention of the

collateral agreement; and that the plaintiff was unaware of the existence of the agreement.

The trial justice specially found that "this was a legitimate business transaction entered into between the parties fully aware thereof. That the now plaintiff is a holder in due course of an instrument and entitled to its full coverage."

The defendants in their brief pose the issues raised by this appeal as:

1. Whether the "illegal collateral agreement" tainted the conditional sales contract as to render the sale "a nullity"; and

2. Whether the plaintiff as purchaser of the conditional sales contract could acquire "greater rights than the original holder of that contract."

The defendants' contention that the collateral agreement was illegal rests for support on G.L. c. 271, § 6A which provides that:

"Whoever sets up or promotes a plan by which goods or anything of value is sold to a person for a consideration and upon the further consideration that the purchaser agrees to secure one or more persons to participate in the plan by respectively making a similar purchase or purchases and in turn agreeing to secure one or more persons likewise to join in the said plan, each purchaser being given the right to secure money, credits, goods or something of value, depending upon the number

of persons joining in the plan, shall be held to have set up and promoted a lottery and shall be punished (by a prescribed fine or imprisonment)''.

The defendants urge that Universal set up a plan by which a colored television set was sold to the defendants for a price and upon the further consideration that Poravas agreed to secure others to participate in the plan by making similar purchases. They rely on the collateral agreement as setting forth such an undertaking on Poravas' part. However, the trial justice appears by the report to have *found that Universal entered into the collateral agreement with the defendants ''in consideration for the sale of the television set and *to induce* the defendants to purchase the same'' (italics supplied). The thrust of this finding is that it was the seller who was undertaking an obligation in consideration of the sale, not the buyer. The statute on the other hand is aimed towards a situation where the buyer undertakes an obligation in consideration of the sale, namely, to secure prospects for further television sales. The emphasis of the collateral agreement is on the seller's undertaking to reward the buyer for securing such prospects, rather than on any obligation on the

---

*The paragraph of the report in which these statements are set forth is not prefaced as in other paragraphs by words identifying the statements that follow as being evidence or as testified to.

part of the buyers to secure them. The trial justice made no finding that the defendants were required as consideration for the sale to secure further prospects for sales of television sets. His finding, above referred to, implies a contrary flow of the consideration. The words in the collateral agreement that Poravas ''shall submit . . . names to (Universal) . . .'' do not in our opinion and in the light of the findings establish an agreement on the part of Poravas so to do. There is no suggestion that the defendant would be liable to Universal for breach of said collateral agreement if he failed to secure, or attempt to secure, a single prospect.

In *A. A. Murphy, Inc.* v. *Taylor,* reported in 383 P.2d 648 (1963), the Oklahoma court had before it a case presenting a set of facts very similar to those in this case. The plaintiff there was the assignee for value of a note and chattel mortgage given in connection with the sale of a stereo. At the time of the sale a finder's agreement was executed reciting that the buyer was being enrolled to participate in an advertising program and providing that he should receive a stated amount for each prospect he submitted who became similarly enrolled and a further sum for enrollment of any prospect secured through a prospect produced by the buyer. The defendant set up the defense of illegality relying on an Oklahoma statute (21 O.S. 1961, sec. 1066) which is substantially in the same terms as G.L. c. 271, s. 6A. The court

in holding that there was no violation of the statute stressed that there was no showing that "the purchaser *agreed* to secure other persons to participate in the plan by making similar purchases". The court quoting from an earlier case (*Krehbiel* v. *State*, 378 P.2d 768, 769 (Okla.-1963) stated: "A selling plan whereby a seller sells goods to a purchaser for a consideration; and in addition thereto the seller grants to the purchaser the privilege of securing one or more persons to make a similar purchase for each of which additional sales the original purchaser receives a specified sum of money, does not constitute a lottery under the provisions of 21 O.S. 1961, secs. 1066,7."

In our view of the case before us, it too presented a factual situation wherein the buyer was not under any obligation to secure other buyers or participants in a plan.

It is not necessary, in this view, to discuss the effect of the provision in the sales contract that it could be assigned by the seller without notice to the purchaser "and when assigned shall be free from any defense . . . by purchaser". (See G.L. c. 106, § 9-206; cf. c. 106, § 3-305, and c. 255, § 12(c) ); or whether if it were held that the collateral agreement were illegal such illegality would so taint the conditional sales contract as to render it a nullity. (See *Rugo* v. *Rugo*, 325 Mass. 612, 619).

Now to deal directly with the "denial" by the trial justice of the defendants' eight re-

quests for rulings, which denials brought the case here.

What has been said above disposes of the trial justice's denial of requests numbered 1, 2, 4, 5, and 8, which deal with the issue of illegality.

Request No. 3 asks for a ruling that:

> "If the Court finds that the "Conditional Sale Contract" violates the provisions of Massachusetts General Laws Chap. 255, Sec. 12, then the plaintiff is not entitled to finance charges, interest charges and fees pursuant to Massachusetts General Laws, Chap. 255, sec. 13G.". The trial justice disposed of that request by stating "I do not so find.".

The defendants in their argument disclosed no instance in which the conditional sales contract violates the provisions of the cited statute; they have failed to brief this point at all. Under these circumstances, this court is not called upon to compare the contents of a conditional sales contract with the statute to determine whether there exists a "substantial failure to comply with the requirements of (§ 12 of G.L. c. 255)", in which event recovery of finance charges would be barred. G.L. c. 255, § 13G.

Requests numbered 6 and 7 asked the trial justice to rule that certain findings were warranted. He failed to act on number 6 and denied number 7. These findings were matters not going to the essence of any issue and the trial

justice was not required to act thereon. *Stella v. Curtis,* 348 Mass. 458, 462. There was no error in the denial of number 7; the evidence did not warrant the finding requested.

There was no special finding that the option to accelerate the payments provided in the conditional sales contract had been exercised by the plaintiff. However, the acceleration clause became operative by the bringing of this action for the full amount. *Quaranto v. Silverman,* 345 Mass. 423, 427. *f.n.*

There being no error, the report is ordered dismissed.

SAMUEL E. KAUFMAN, Esq.
    for plaintiff
DAVID H. SILIN, Esq.
    for defendant