*Western District*

No. 181418

## VALLEY BANK AND TRUST COMPANY

### v.

## JAMES A. SCIARTELLI, ET UX.

Argued: May 16, 1967   Decided: July 10, 1967

*Present:*  Garvey, P. J., Moore, J., Levine, J.J.

Tried to: *Sloan, J.* in the District Court of Springfield.
No. 181418.

*Levine, J.* This is an action of contract to recover the face amount of a consumer note made by the defendants and payable to Connecticut Home Products Corp., which in turn endorsed it to the plaintiff without recourse.

The answer is general denial, that the plaintiff is an assignee of a "contractor/seller" and thereby subject to defenses good against the latter, that the consideration for the note was illegal and "specifically barred as a tie-in sale" with the knowedge of the plaintiff, and "that the plaintiff is guilty of a violation of a fiduciary relationship between the parties". The trial judge found for the defendants.

*At the trial there was evidence tending to show that:* In July 1964, a salesman representing the Connecticut Home Products Corp. called on the defendants, explained a built-in vacuum cleaner system to them, and told them that their acquaintance, one Manolakis, had purchased such a vacuum cleaner from him. He also stated to them that if the defendants purchased the system, they could receive a $300 bonus from the seller by providing names of 20 potential customers, and a $50 bonus for each customer who purchased a vacuum cleaner as a result of a lead furnished by the defendants.

The defendants contacted Manolakis who informed them that he had purchased such a system, that it was a good vacuum cleaner and that an employee of the seller had informed

him that the seller was a very reputable company. Relying on what Manolakis said, defendants purchased the vacuum cleaner system, signed the consumer note, a credit application and a purchase agreement. At the time, the female defendant was 20 years of age, but minority was not pleaded. The consumer note was purchased by the plaintiff from Connecticut Home Products Corp., which endorsed the note to the plaintiff without recourse.

Subsequently, the defendants received in the mail a written and signed "Commonwealth Advertising Representative's Commission Agreement" setting forth substantially the terms of the bonus selling agreement and which was signed by Commonwealth and also received a printed letter from Commonwealth Advertising of Connecticut, Inc., concerning the bonus arrangement.

The report states: "There was evidence that Connecticut Home Products Corp., and Commonwealth Advertising of Connecticut Inc., were the same company".

Defendants submitted names of 20 prospective purchasers to Commonwealth Advertising of Connecticut, Inc. but never heard anything from them. They tried to contact them by phone without success and did not know the name of the salesman they had dealt with and had not seen him since buying the system. In January 1965, defendants received notice that Connecticut Home Products Corp. was in Bankruptcy.

No payments were made by the defendants on the note and under the terms thereof, the plaintiff accelerated maturity of the note for non-payment of installments on January 7, 1965.

At the close of the trial, the plaintiff made the following requests for rulings:

1. There is evidence which warrants a finding for the plaintiff.

2. The defendants have failed to sustain the burden of proving that the original transaction was illegal.

3. The defendats have failed to sustain the burden of proving that the plaintiff violated a fiduciary obligation.

4. The original transaction was not a violation of General Laws, Chapter 271, Section 6A.

5. A violation of General Laws, Chapter 271, Section 6A does not exist where a bonus is offered by a seller to a buyer for producing other buyers, where there is no requirement at the time of the first sale that the other buyers so produced also participate in the plan.

The trial judge granted plaintiff's request for rulings No. 1 and denied all the others. The plaintiff, claiming to be aggrieved by the denial of its requests for rulings Nos. 2, 3, 4 and 5 claimed this report.

The primary issue before this court is whether or not the plan promoted by Connecticut Home Products Corp. was a lottery within

the meaning of General Laws, Chapter 271, Section 6A and hence an illegal transaction.

The aforementioned statute reads as follows:

"Whoever sets up or promotes a plan by which goods or anything of value is sold to a person for a consideration and upon the further consideration that the purchaser agrees to secure one or more persons to participate in the plan by respectively making a similar purchase or purchases and in turn agreeing to secure one or more persons likewise to join in the said plan, each purchaser being given the right to secure money, credits, goods of something of value, depending upon the number of persons joining the plan shall be held to have set up and promoted a lottery and shall be punished as provided in section seven. The supreme judicial court shall have jurisdiction in equity upon a petition filed by the attorney general to enjoin the further prosecution of any such plan and to appoint receivers to secure and distribute the assets received thereunder."

There have been no cases in our Commonwealth bearing directly on the question of the "endless chain transactions" which are specifically barred by the above cited statute, but many of the courts of our sister states and of the federal government have held similar referral-selling-agreements to be lotteries and therefore

contrary to law on the ground that chance permeates such schenes in their entirety.

There are three elements of a lottery: (1) the payment of a price for (2) the possibility of winning a prize, (3) dependant upon hazard or chance. *Comm.* v. *Lake,* 317 Mass. 264. *Comm.* v. *Wall,* 295 Mass. 70 *Comm.* v. *Plissner,* 295 Mass. 457.

The Court of Appeals of Kentucky in the case of *Comm.* v. *Allen,* 404 S.W. 2d 464 considered a referral-selling plan similar to the one at bar, and it was held a lottery. There, the defendant seller solicited names from a customer, which names were supposed to provide future sales. The customer furnishing the names was told that he would receive some prize, either money or credit or something of value as a result of submitting the names. Since the customer would receive his prize by chance only upon the happening of a future event over which he had no control, the plan was held to be a lottery and contrary to law. The court relied heavily upon the case of *Sherwood and Roberts-Yakima Inc.* v. *Leach,* (Wash.) 409 2d 160, in which the Washington Supreme Court held such a plan to be a lottery and therefore illegal.

The Supreme Court of New York in *State of New York* v. *I.T.M. Inc.,* 275 NYS 2d 303, 52 Misc. 2d 39, enjoined corporate and individual promoters of the referral-type sales programs. It was held that laws prohibiting lotteries apply not merely to pure gambling operations, but

also to business operations conducted as lotteries. It was further held that since the element of chance existed in endless chain transactions consisting of referral-type plans under which promoters agree to pay consumers a specified sum for each sale resulting from the submission of names, that such a transaction was subject to condemnation as a lottery.

The United States Court of Appeals, Tenth Circuit, in *Zebelman* v. *United States of America,* 339 F. 2d 484, held that a seller is conducting and promoting a lottery when it induces a purchaser to participate in a referral-selling scheme in which the purchaser has no control over the payment or receipt of a bonus or prize which is dependent in whole or in part upon lot or chance.

We have found only two states, Ohio and Oklahoma, which have held that such promotional plans are not lotteries. See *Yoder* v. *So-Soft of Ohio, Inc.,* 202 N. E. 2d 329. *Krehbiel* v. *State,* (Okla.) 378 P. 2d 767. After careful consideration of all of the cases on the point in issue, we do not choose to follow the Ohio and Oklahoma decisions and believe that after further review, they may well reverse their present position to conform to the almost unanimous opinions of the other jurisdictions.

In the case at bar the referral-selling, bonus plan, was a train transaction which is clearly

prohibited by General Laws, Chapter 271, Section 6A and as such was illegal.

■ The note intimately connected with the illegal contract was tainted with illegality and is unenforceable. The assignee of the note took subject to all the defenses the defendants had against Connecticut Home Products Corp.

In view of our opinion that the contract was illegal as an endless-chain transaction prohibited by our lottery statutes and the note likewise unenforceable, it becomes unnecessary for us to consider the second issue raised as to whether or not there was a violation of any fiduciary obligation.

There was no error in the denial of the plaintiff's requests for rulings Nos. 2, 3, 4 and 5, and, therefore, the report is to be dismissed.

*Moore, J. does not concur.*

GERALD R. HEGARTY
   of Springfield for the plaintiff.

No brief or argument for the defendant.