Fumari J.
This is an action to recover the balance due on apromissory note executed in favor of the plaintiffs assignor by the defendants in partial payment for their purchase of a residential condominium.
The defendants’ answer set forth multiple affirmative defenses and counterclaims which included allegations of breach of contract, breach of implied covenants of good faith and fair dealing, fraudulent inducement, conspiracy, abuse of process, violations of G.Lc. 93A and unclean hands.
After trial, judgment was entered for the plaintiff on both its complaint and the defendants’ counterclaims.
The defendants thereafter requested a report to this Division claiming to be *205 aggrieved by the trial court’s denial of nineteen (19) of the thirty-nine (39) requests forrulings filed by the defendants[2] and bythecourt’sdenialofthedefendants’“Motion for a Directed Finding”[3] which was submitted at the close of the plaintiffs case. The scope of appellate reviewto which the defendants are entitled is necessarily restricted, however, to those issues which have’been briefed and argued by the defendants. Dist./Mun. Cts. R. Civ. P., Rule 64(f).. See, e.g., Pitochelli v. Champy, 1983 Mass. App. Div. 141, 142. The two issues identified and argued in the defendants’ brief are:
1. Whether the trial court erred in determining that representations made to the defendants by the plaintiffs agents were not fraudulent misrepresentations.
2. Whether the trial court erred in determining that the plaintiffs referral selling scheme did not violate G.Lc. 271, §6A
The reported evidence relevant to these two issues indicates that on March 26, 1987, defendants Gerald H. and Eve R. Popkin purchased residential condominium unit #304 which was part of the 120 unit, five building Pine Ridge Condominium complex in Townsend, Massachusetts. The net purchase price paid by the defendants was $63,000.00, which reflected a ten (10%) percent early closing discount given on the unit selling price of $69,990.00. The defendants obtained conventional first mortgage financing from Midcounty Bankfor $56,000.00, and executed a promissory note in the amount of $7,000.00 for a second mortgage payable to Steven M. Rostoff (“Rostoff”), d/b/a Pine Ridge Funding Company. The note, which is the subject of the present suit, was purchased by the plaintiff from Pine Ridge Funding Company for ninety (90%) percent of its face value on May 1,1988, and the assignment of the note and the mortgage were recorded.
The development and sale of the Pine Ridge units was a joint venture by STE Development Corporation, an affiliate of the plaintiffs, and Patriot Real Estate Development Corporation (“Patriot”). The condominium units were sold by Pine Ridge Development Trust (“the Seller”) and the Seller’s real estate agents were employees of Patriot. The defendants negotiated their purchase of unit #304 with Patriot employees James I. Harris (“Harris”) and Rostoff, the original payee of the defendants’ note.
Prior to the defendants’ March 26,1987 purchase of the condominium, Harris and Rostoff told the defendants that the fair market value of Pine Ridge Unit #304 was “at least $69,900.00.” The only evidence of valuation offered by the defendants was an October 9, 1986 appraisal of a different Pine Ridge Unit, #536, which showed an estimated fair market value for that unit at that time of $66,200.00.
Harris and Rostoff also told the defendants that the Pine Ridge complex and unit #304 were in “excellent” condition. The defendants introduced evidence that at the time of their purchase of Unit #304, there was a septic system problem at Pine Ridge which was not disclosed to them, and which had resulted in a back-up into the first floor of a different Pine Ridge building from that in which Unit #304 was located. The Pine Ridge Project Manager, Thomas W. Cavanaugh, testified that the problem was corrected by a pipe replacement.
Further, Harris and Rostoff told the defendants that they would incur no out-of- *206 pocket expenses in connection with their ownership of Unit #304 because Patriot would pay the defendants a monthly “subsidy” for the first year to compensate them for the difference between rental income from the unit and condominium costs and fees, and would resell the unit at a profit after the first year. The defendants did in fact receive payment of the “subsidy” from Patriot during the first year of ownership of Unit #304. The defendants testified that they were unable to sell Unit #304 after their first year of ownership at prices even lower than the purchase price they had paid.
Finally, Harris and Rostoff told defendant Gerald Popkin that if he referred other potential buyers to Patriot, Patriot would pay him $1,000.00 for each referral which resulted in the completed sale of a condominium unit. Nineteen referrals by Popkin resulted in completed sales and he received $19,000.00 from Patriot
The trial court made extensive subsidiary findings, including the following which pertain to the issues raised on this appeal:
I further find that the defendant Gerald H. Popkin is an attorney who is also a sophisticated real estate investor. He has also served as a conveyancer for a number of real estate transactions.
I further find that the decreased value of the unit in May of 1988 and subsequently is due primarily to the collapse of the real estate market and not due to any misrepresentation of the plaintiff or its agents. ...
The defendant and the developer had a business arrangement whereby the developer agreed to pay and did, in fact, pay the defendant a $1,000.00 commission for each unit purchased by any person who was introduced by the defendant to the developer and who subsequently purchased a unit. These commissions totaled $19,000.00. Defendant was not required to purchase a unit in order to receive these commissions.
The defendant Gerald Popkin represented himself and his wife, Eve Popkin, and the Midcounty Bank at the closing. ...
I further find that because of the defendant’s background and sophistication in real estate matters, that any so-called misrepresentations allegedly made by the developers or their agents were merely “puff or salesman’s talk and were not relied on by the defendant, Gerald Popkin. I find that the defendant, Gerald Popkin, relied on his expertise and real estate knowledge and not on any representations made by the plaintiff or his agents.
D efendant claimed that there were serious septic system problems which were concealed from defendant. Yet defendant’s principal witness used to bolster this allegation was Thomas W. Cavanaugh, Project Manager and employee of Pine Ridge, who admitted that he subsequently purchased 2 units in this same development in May of 1987. He testified that the septic system problem discovered in March of 1987 was corrected by a pipe replacement in Building #1 of the development
1. Defendants’ requests numbers 8,10,11,12,21,25,30 and 32 soughtrulings that Patriot’s agents had knowingly misrepresented the value, condition and resaleability of Pine Ridge Unit #304 and that the defendants had been damaged in consequence of such wrongful conduct. Allegations of fraud or misrepresentation customarily present questions of fact for a trial court See, e.g., Junkins v. Slender Woman, Inc., 7 Mass. App. Ct. 878 (1979); Perry v. Schlaikjer, 5 Mass. App. Ct. 866 (1977). There was no error in the trial court’s denial of defendants’ requests as the rulings sought were inconsistent with the court’s proper subsidiary findings of fact. DiGesse v. Columbia *207 Pontiac Co., 369 Mass. 99, 102 (1975).
Itwas incumbentupon the defendants to establish that the plaintiffs assignor or its agents had made
a false representation of a material fact with knowledge of its falsity for the purpose of inducing the [defendants] to act thereon, and that the [defendants] relied upon the representation as true and acted upon it to [their] damage.
Danca v. Taunton Sav. Bk., 385 Mass. 1, 8 (1982), quoting from Kilroy v. Barren, 326 Mass. 464, 465 (1950). See also, International Totalizing Sys. Inc. v. PepsiCo, Inc., 29 Mass. App. Ct. 424, 431 (1990). The trial court effectively found that none of the statements of Patriot’s agents satisfied all of the requisite elements of such tort The court’s findings of fact cannot be disturbed on this appeal because there is no indication in the record that such findings were impermissible asa matter of law. Heil v. McCann, 360 Mass. 507, 511 (1971). The reason is that the defendants have failed to advance any evidence which would have required the trial court to find that the statements of Rostoff and Harris were representations of fact, were knowingly false or directly resulted in a monetary loss to the defendants because of their actual reliance upon them.
It is well established that “false statements of opinion, of conditions to exist in the future or of matters promissory in nature” are not actionable. McMahon v.M & D Builders, Inc., 360 Mass. 54, 57 (1971). Whether the Rostoff-Harris statement of the fair market value of Unit #304 was a representation of fact or an expression of opinion was an issue of fact for the trial court, Coe v. Ware, 271 Mass. 570, 573 (1930), which depended on the nature of the representation and the language used, the subject matter, the roles and relationship of the parties, the opportunity for investigation and reliance and all attendant circumstances. John A. Frye Shoe Co. v. Williams, 312 Mass. 656, 663-665 (1942). Viewing the reported evidence in the light of these factors, a finding by the trial court was warranted that a statement by the seller’s real estate agents to prospective buyers that the market value of property offered for sale was at least as much as the advertised selling price was merely an unactionable expression of opinion, seller’s talk or “puffing.” See generally, Yerid v. Mason, 341 Mass. 527, 530 (1960).
As the agents’ statement of the current market value of Unit #304 was properly found by the trial court to be an expression of opinion or dealer’s talk, the agents’ additional representation that the unit could be “sold at a profit” after one year was clearly an opinion as to the increased future market value of the condominium and thus an unactionable statement of “conditions to exist in the future.” McMahon v. M & D Builders, supra at 57. This statement was similar in import and substance to the representation that Pine Ridge and Unit #304 were in “excellent” condition. Statements of the superlative value, general condition or profit potential of items offered for sale are customarily deemed mere seller’s talk rather than representations of fact.
Thus a statement that an article is made of the finest material obtainable, that a particular automobile is the most economical car on the market, or that a certain investment is sound and will yield a handsome profit and similar claims are generally understood to be matters of opinion and if reliance is placed on them and they turn out otherwise the law does not afford aremedy.
Kabatchnick v. Hanover-Elm Bldg. Corp., 328 Mass. 341, 344 (1952). Compare, e.g., Briggs v. Carol Cars, Inc., 407 Mass. 391, 395 (1990).
The defendants argue unpersuasively that the dispositive portion of the court’s subsidiary findings was notthe inactionable nature of the representations, butthe lack *208 of any justifiable reliance by the defendants. They contend that the court erred in substituting for the accepted definition of justifiable reliance, as that which is generallyreasonableunder given circumstances, Forbes v. Thorpe, 209 Mass. 570 (1911), an improper, higher standard based on what was reasonable for an individual of defendant Popkin’s legal training and real estate experience. The short answer to the defendants’ contention is that the court made no finding at all on the question of whether any reliance by the defendants would have been justified. The court instead made a finding on an entirely separate issue of whether the defendants had actually relied on the Rostoff-Harris statements. To recover on a claim of fraud, a party may prove actual reliance by demonstrating that the misrepresentations at issue were a substantial, though not the sole, factor in determining his course of conduct National Shawmut Bk. v. Johnson, 317 Mass. 485, 490 (1948); National Car Rental Sys. Inc. v. Mills Transf. Co., 7 Mass. App. Ct. 850, 852 (1979). The credibility of defendants’ assertion of actual reliance on the Harris-Rostoff statements, however, remained a matter for the trial judge’s assessment, Dolham v. Peterson, 297 Mass. 479, 481 (1937), and he was free to disbelieve such assertion even if uncontroverted. Glazier v. Andrews, 349 Mass. 417, 419 (1965).
The trial court’s proper findings that the Harris-Rostoff statements were not misrepresentations of fact upon which the defendants actually relied are dispositive of this appeal. It may also be noted briefly that the defendants failed to introduce any evidence which would have required a finding in their favor on the remaining tort elements of the falsity of the representations and any causal relationship to damages sustained. Evidence limited to one earlier estimation of the value of a different Pine Ridge condominium did not establish that the market value of Unit #304 at the time of the closing was not $69,900.00 as represented. The temporary existence and prompt repair of a single, septic system problem in another Pine Ridge building in no way proved categorically that the condition of Pine Ridge in general and Unit #304 in particular were not “excellent”. Similarly, there was no evidence offered by the defendants to sustain their burden of proving that any misrepresentation as to the profit potential of Unit #304 on resale was directly and causally related to any expenses incurred by the defendants in consequence of their inability to resell the unit. See, as to necessity of proving causation, Kilroy v. Barron, 326 Mass. 464 (1950); Connelly v. Bartlett, 286 Mass. 311 (1934). There was no evidence which would require reversal of the trial court’s finding of fact that the defendants’ damages were a direct result of the collapse of the real estate market in 1988.
2. The second issue presented on this appeal is whether Patriot’s offer to pay the defendants $1,000.00 for each referral of a potential buyer which resulted in the completed sale of a condominium unit constituted an illegal, endless-chain-sale scheme in violation of the Massachusetts “Anti-Lottery Statute,” G.Lc. 271, §6A. As grounds for their Rule 41(b)(2) motion, the defendants argue that because such referral plan was both illegal and an integral part of the sale of Unit #304, the defendants’ promissory note given in consideration of such illegal contract was unenforceable. We concur with the trial court’s finding that Patriot’s referral bonus offer did not violate G.Lc. 271, §6A, and affirm the court’s denial of the defendants’ motion.
The statute provides in relevant part:
Whoever sets up or promotes apian by which goods or anything of value is sold to a person for a consideration and upon the further consideration that thepurchaseragreestosecureoneormorepersonstoparticipateintheplan by respectively making a purchase or purchases and in turn agreeing to secure one or more persons to participate in the plan by respectively making a similar purchase or purchases and in turn agreeing to secure one or more person s likewise to join in the said plan. each purchaser bein g given the right to secure money . credits,goods or something ofvalue.dependinguponthe *209 number of persons joining in the plan . shall be held to have set up and promoted a lottery and shall be punished as provided in section seven... (emphasis supplied).
Pursuant to its express terms, the statute prohibits as illegal lotteries only those plans in which sales are based “upon the further consideration that the purchaser agrees to secure one or more persons to participate in the plan.” The exclusive consideration for Patriot’s sale of Pine Ridge Unit #304 to the defendants was the purchase price of the condominium. The defendants were not required to provide names of potential buyers to obtain or complete their purchase of Unit #304. Conversely, the defendants were not required to buy a condominium unit as a precondition for referring buyers to Patriot and receiving a $1,000.00 commission, bonus or finders’ fee upon completed sales to such buyers. The defendants’ obligations on the promissory note given as sole consideration for their condominium purchase remained unaffected by Patriot’s referral offer, and their required payment of the note was neither offset nor credited by any monies received for the successful referral of condominium buyers. Finally, the defendants’ entitlement to a $1,000.00 sumupon the successful referral of an actual buyer in no way hinged upon that buyer’s “joining in the plan” as required by G.Lc. 271, §6A.
In short, the Patriot referral sales plan, which constituted a collateral agreement unrelated to the defendants’ purchase of Unit #304, was not an illegal lottery violative of G.Lc. 271, §6A. First Finance Corp. of Mattapan v. Harrigan, 36 Mass. App. Dec. 26, 33-34 (1966).
The statute is aimed towards a situation where the buyer undertakes an obligation in consideration of the sale, namely, to secure prospects for further... sales. The emphasis of the collateral agreement is on the seller’s undertaking to reward the buyer for securing such prospects, rather than on any obligation on the part of the buyer to secure them.
First Finance Corp. of Mattapan v. Poravas, 35 Mass. App. Dec. 170, 176 (1966).
The defendants’ reliance on Valley Bank & Tr. Co. v. Sciartelli, 38 Mass. App. Dec. 141 (1967) for a contrary proposition is misplaced as that case is easily distinguished on its facts. The defendants’ referral of prospective purchasers in Sciartelli was actually required as part of the consideration for the defendant’s pin-chase of a vacuum cleaner. Moreover, as the defendant’s opportunity to obtain a “prize” for submitting names of potential buyers was wholly dependent upon chance, the Sciartelli plan exhibited the essential characteristics of a lottery which are “ (1) thepaymentof aprice for (2) the possibility of winning a prize, (3) dependent upon hazard or chance.” Commonwealth v. Lake, 317 Mass. 264, 266 (1944); Commonwealth v. Wall, 295 Mass. 70, 72, (1936). In the instant case, the $1,000.00 bonus was not a “possibility ... dependent upon hazard or chance,” but a contractual obligation on the part of Patriot entitling the defendants to payment upon their securing an actual purchaser of a condominium unit
A selling plan whereby a seller grants to the purchaser the privilege of securing one or more persons to make a similar purchase for cash of which additional sales the original purchaser receives a specified sum of money does not constitute a lottery. ...
Poravas, supra at 177, quoting from Krehbiel v. State, 378 P.2d 768, 769 (Okla. 1963). There being no error, the report is dismissed.

 The trial judge ruled on each of the defendant’s 39 requests. See, however, as to excessive number of requests for rulings, Stella v. Curtis, 348 Mass. 458, 460 (1965); Commercial Credit Corp. v. Stan Cross Buick, Inc., 343 Mass. 622, 626 (1962).

 We construe the defendants’ motion as one for involuntary dismissal pursuant to Dist/Mun. Cts. R. Civ. P., Rule 41(b) (2). See Madden v. Malmart Mortg. Co., 1984 Mass. App. Div. 239, 240-241 and cases cited.